ROBERT A. CRINKLEY, Plaintiff-Appellant, *v.* DOW JONES AND CO. *et al.*, Defendants-Appellees.

First District (5th Division) No. 78-871

Opinion filed December 1, 1978.—Modified on denial of rehearing February 2, 1979.

872

Joseph Michael O'Callaghan and William P. Treacy, both of Chicago, for appellant.

Jeremiah Marsh and Michael M. Conway, both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee Dow Jones and Co.

Frederic J. Artwick and James S. Whitehead, both of Sidley & Austin, of Chicago, for appellee G. D. Searle and Co.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order dismissing four of eight counts of his complaint. The issues presented are: (1) whether the trial court abused its discretion in dismissing two counts brought under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 311 *et seq.*) (hereinafter referred to as the Deceptive Trade Practices Act) and denying plaintiff leave to amend to include as a basis for relief the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) (hereinafter referred to as the Consumer Fraud Act); and (2) whether the trial court abused its discretion in dismissing two counts alleging interference with prospective economic advantage for failure to amend these originally defective counts within 28 days, as ordered.

This case arose from an article appearing on April 27, 1976, in the Wall Street Journal, published by defendant Dow Jones & Co., reporting a statement of defendant G. D. Searle & Co. concerning plaintiff, a former Searle executive. The relevant portion of the article stated:

"In another development, Searle disclosed that two top officers involved in the payment of $1.3 million to agents of foreign governments to win business abroad have resigned. William Owens * * * and Robert Crinkley, president of the radio-graphics division, quit in early February. * * * A spokesman said the two were the only resignations to result from the disclosures about payoffs.

In February, after the resignations, Searle told the Securities and Exchange Commission that 'certain members of corporate management were generally aware that some such payments were being made and, in some instances, authorized the arrangements to make payments.' "

Plaintiff's complaint for damages against defendants contained one count alleging violation of the Deceptive Trade Practices Act against each defendant on the theory that defendants disparaged Crinkley's services, in violation of section 2(8) of the Act (Ill. Rev. Stat. 1977, ch. 121½, par.

312(8)); one count against each defendant alleging interference with prospective economic advantage on the theory that each defendant interfered with plaintiff's expectation of entering into various employment relationships; and two counts of libel against each defendant.

Defendants moved to dismiss the counts brought under the Deceptive Trade Practices Act on the ground that only injunctive relief, and not damages as sought by plaintiff, are available thereunder (Ill. Rev. Stat. 1977, ch. 121½, par. 313), and defendant Dow Jones further contended that since plaintiff failed to allege it acted with knowledge of the article's deceptive character, the count was insufficient against it as a publisher (Ill. Rev. Stat. 1977, ch. 121½, par. 314(2)). Defendants also moved to dismiss the counts alleging interference with prospective economic advantage on the ground that plaintiff failed to allege they purposefully intended to interfere with plaintiff's business expectations, as is required to state such a cause of action, and defendant Searle further alleged that these counts were insufficient at law in that plaintiff failed to allege the exact identity of the third parties with whom his economic expectations were destroyed. A motion to dismiss the libel counts on the ground that the limitations period had expired is not before us in the instant appeal.

The trial court, on December 7, 1977, ordered the counts brought under the Deceptive Trade Practices Act dismissed with prejudice. It appears that plaintiff argued that these counts would be legally sufficient if he were allowed to amend them to include allegations that the violations of the Deceptive Trade Practices Act were also violations of the Consumer Fraud Act which allows recovery of damages. (Ill. Rev. Stat. 1977, ch. 121½, par. 270a.) The trial court denied plaintiff leave to amend these counts but granted him leave to file a proposed amendment, stating however that it would "be of no effect as to the substance of the claim." In addition, the counts alleging interference with prospective economic advantage were stricken in an order which provided that if plaintiff did not amend these counts within 28 days, they would be dismissed with prejudice.

Within 30 days, plaintiff moved to vacate the order of December 30, 1977, requested leave to amend the counts brought under the Deceptive Trade Practices Act, and asked for an additional 120 days within which to file amended counts alleging interference with prospective economic advantage. Plaintiff asserted that he needed this additional time to determine through discovery whether he could properly allege that defendants purposely intended to disrupt plaintiff's economic expectations. On February 21, 1978, after a series of continuances precipitated by the illness of the original trial judge, plaintiff's motion to

vacate was denied and the counts alleging interference with prospective economic advantage were dismissed with prejudice on the ground that plaintiff failed to amend those stricken counts within 28 days, as ordered.

OPINION

I.

■■ ■ Plaintiff first contends that the trial court abused its discretion in dismissing the counts brought under the Deceptive Trade Practices Act and refusing plaintiff leave to amend them to include as a basis for relief the Consumer Fraud Act. Initially, we note that plaintiff's original counts seeking damages solely under the Deceptive Trade Practices Act failed to state a cause of action because, under that Act, injunctive relief is the exclusive remedy. (Ill. Rev. Stat. 1977, ch. 121½, par. 313; *National Educational Advertising Services, Inc. v. Cass Student Advertising Inc.* (N.D. Ill. 1977), 454 F. Supp. 71; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.) However, "a cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the pleader to relief, and then only if it is apparent that even after amendment, if leave to amend is sought, no cause of action can be stated." (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242; *Dinn Oil Co. v. Hanover Insurance Co.* (1967), 87 Ill. App. 2d 206, 211-12, 230 N.E.2d 702, 705.) Thus, in determining the propriety of the trial court's action, we will consider whether plaintiff's proposed amendment stated a cause of action.

The amendment, in pertinent part, alleged that by the article appearing in the Wall Street Journal, defendants disparaged the services of plaintiff as an executive in violation of section 2(8) of the Deceptive Trade Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 312(8)); that under section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1977, ch. 121½, par. 262) any violation of the Deceptive Trade Practices Act is also a violation of the Consumer Fraud Act; that defendants therefore violated the Consumer Fraud Act; and that under section 10a of the Consumer Fraud Act (Ill. Rev. Stat. 1977, ch. 121½, par. 270a) plaintiff is entitled to recover damages against them. Thus, in order to determine whether plaintiff has stated a cause of action under the Consumer Fraud Act, we must ascertain whether plaintiff has properly alleged a violation of the Deceptive Trade Practices Act.

■■ In this regard, defendants have presented several arguments against the validity of plaintiff's proposed amendment, and we will now consider them. First, defendants Searle and Dow Jones contend that the holding in *Brooks v. Midas-International Corp.* prohibits plaintiff from employing

the Consumer Fraud Act in order to obtain damages for a violation of the Deceptive Trade Practices Act. They rely in particular upon the following quotation from *Brooks*:

> "Thus, under the amended section 2 [of the Consumer Fraud Act], the conduct specified in the Uniform Deceptive Trade Practices Act is included as acts constituting unlawful practices. However, the scope of redress that can be afforded to an aggrieved private party is not expanded by this provision." (47 Ill. App. 3d 266, 277, 361 N.E.2d 815, 822.)

We believe, however, that this quotation has been misinterpreted by defendants and that it does not support their contention. In the section of the *Brooks* opinion containing this quotation, the court was faced with the question of whether a private plaintiff was entitled to injunctive relief in a suit brought solely under the Consumer Fraud Act. It was held that the relief section of that Act (Ill. Rev. Stat. 1977, ch. 121½, par. 270a) limits private plaintiffs to actions for damages, and that the Consumer Fraud Act's inclusion of Deceptive Trade Practices Act violations as offenses does not mean that plaintiffs, in suits brought solely under the Consumer Fraud Act, are entitled to the injunctive relief authorized by the Deceptive Trade Practices Act. We do not view *Brooks* as holding that damages are unavailable under the Consumer Fraud Act for violations of the incorporated Deceptive Trade Practices Act.

■■ ■ Defendant Searle next maintains that the Deceptive Trade Practices Act only reaches unethical *competitive* conduct, and that plaintiff's original counts and proposed amendments fail to state a cause of action because plaintiff and his former employer Searle are not competitors. Searle places particular emphasis on cases which have incidentally referred to the Deceptive Trade Practices Act as a codification of the common law of "unfair competition." (*Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 274, 361 N.E.2d 815, 821; *National Football League Properties, Inc. v. Consumer Enterprises, Inc.* (1975), 26 Ill. App. 3d 814, 819-20, 327 N.E.2d 242, 247, cert. denied (1975), 423 U.S. 1018, 46 L. Ed. 2d 390, 96 S. Ct. 454; *Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338, 344, 290 N.E.2d 701, 704.) We do not feel that these cases indicate plaintiffs and defendants must be engaged in competition in order for an action to be sustained under the Deceptive Trade Practices Act. "Unfair competition" is often used as a generic term to refer to a group of diverse business torts, such as commercial disparagement, interference with prospective economic advantage, and passing off, and does not indicate that the existence of competition is a necessary element of these causes of action. (See 1 H. Nims, Unfair Competition and Trade-Marks §1, at 3 (4th ed. 1947); Note,

*Developments in the Law—Competitive Torts,* 77 Harv. L. Rev. 888, 890-91 (1964) (hereinafter cited as *Competitive Torts*).) More significantly, section 2 of the Deceptive Trade Practices Act specifically states that a plaintiff need not prove competition between the parties in order to sustain an action. (Ill. Rev. Stat. 1977, ch. 121½, par. 312.) Thus, we hold that the absence of competition between plaintiff and defendants did not render plaintiff's proposed amendment insufficient in law.

■■■ Apart from the contentions of defendants, we believe that plaintiff's original and amended counts failed as to both defendants because, while the offending article may have impugned plaintiff's integrity, it did not disparage the quality of his services as an executive. Section 2(8) of the Deceptive Trade Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 312(8)), which forms the basis of plaintiff's proposed amendment, substantially embodies the common law tort of commercial disparagement. (Ill. Ann. Stat., ch. 121½, par. 311 *et seq.*, Prefatory Illinois Notes, at 121 (Smith-Hurd Supp. 1978).) This tort has consistently been applied to statements which disparage the *quality* of one's goods or services. (See *Aerosonic Corp. v. Trodyne Corp.* (5th Cir. 1968), 402 F.2d 223; *Black & Yates, Inc. v. Mahogany Ass'n, Inc.* (3d Cir. 1941), 129 F.2d 227, *cert. denied* (1942), 317 U.S. 672, 87 L. Ed. 539, 63 S. Ct. 76; *Caron Corp. v. R.K.O. Radio Pictures, Inc.* (S. Ct. 1941), 28 N.Y.S.2d 1020, *aff'd mem.* (1942), 264 App. Div. 763, 35 N.Y.S.2d 715, *cert. denied* (1943), 318 U.S. 757, 87 L. Ed. 1130, 63 S. Ct. 531; *Shevers Ice Cream Co. v. Polar Products Co., Inc.* (S. Ct. 1921), 194 N.Y.S. 44; Prosser, Torts §128, at 917 (4th ed. 1971); Smith, *Disparagement of Property*, 13 Colum. L. Rev. 13 (1913) (hereinafter cited as *Disparagement of Property*); Comment, *The Law of Commercial Disparagement: Business Defamation's Impotent Ally,* 63 Yale L. J. 65 (1953).) But in the case at bar, the allegedly offending statement did not disparage the *quality* of plaintiff's services as an executive. The statement appears to have imputed want of integrity to plaintiff in his business, which may be actionable under a defamation theory. (*Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 340 N.E.2d 539; *Grabavoy v. Wilson* (1967), 87 Ill. App. 2d 193, 230 N.E.2d 581; *Whitby v. Associates Discount Corp.* (1965), 59 Ill. App. 2d 337, 207 N.E.2d 482; 33A Ill. L. & Prac. *Slander & Libel* §27 (1970).) However, as the commentators have correctly observed, defamation and commercial disparagement are separate and distinct torts: a defamation action lies when the integrity or credit of a business has been impugned, but if the quality of the goods or services are demeaned, then an action for commercial disparagement may be proper. See 33A Ill. L. & Prac. *Slander & Libel* §2 (1970); Prosser, Torts §128, at 917-18 (4th ed. 1978); H. Hibschman, *Defamation or Disparagement?,* 24 Minn. L. Rev. 625 (1940); *Disparagement of Property*, at 129; *Competitive Torts*.

We think that the holding in *Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees of America* (1948), 400 Ill. 38, 79 N.E.2d 46, is significant in this regard. In that case, plaintiffs alleged that defendants, members of a labor union, distributed pamphlets stating that plaintiffs maintained unsanitary working conditions, brazenly quizzed workers concerning their union affiliations, despised the United States government, and hired supervisory personnel who lacked good morals and acted like Storm Troopers. Although plaintiff's request for injunctive relief was ultimately denied, the court recognized that the allegedly offending publications were "if anything, * * * libels" (400 Ill. 38, 50, 79 N.E.2d 46, 52) and not statements which constituted disparagement. The court also noted:

> " 'There is a clear line of demarcation between the two torts [defamation and commercial disparagement] which is often overlooked. The first is concerned with interests of personality, the other with interests of property. * * * [T]he action for disparagement * * * has a place of its own in the law; and is not a mere branch, or special variety, of the action of defamation of personal reputation * * * .' " (400 Ill. 38, 49-50, 79 N.E.2d 46, 52 (quoting *Black & Yates, Inc. v. Mahogany Ass'n Inc.* (3d Cir. 1941), 129 F.2d 227, 235-36).)

Thus, it appears that words which criticize the quality of one's goods or services will give rise to a cause of action for disparagement, and that words which reflect upon one's integrity in his business or profession may serve as grounds for a defamation action. A statement may also simultaneously attack both quality and integrity, in which case both causes of action may lie. (See *Black & Yates, Inc. v. Mahogany Ass'n, Inc.* (3d Cir. 1941), 129 F.2d 227, 236; *Inland Printer Co. v. Economical Half Tone Supply Co.* (1901), 99 Ill. App. 8; *Competitive Torts*, at 894.) In the case at bar, however, we think it clear that the article appearing in the Wall Street Journal did not attack the quality of plaintiff's professional services as an executive. We therefore hold that plaintiff's original and proposed amended counts for violation of the Deceptive Trade Practices Act and the Consumer Fraud Act, which is in essence an action for commercial disparagement, failed to state a cause of action.

■■ Having so held, it will not be necessary to consider the additional contention of Dow Jones that no cause of action was stated because of the absence of allegations that Dow Jones published the article with knowledge of its falsity. Regardless as to whether such knowledge should have been alleged, the dismissal would still be upheld because of our finding, as will be set forth below, that the article was not actionable disparagement in that it did not criticize the quality of plaintiff's services as an executive.

## II.

Plaintiff next posits that the trial court abused its discretion in dismissing with prejudice the counts alleging interference with prospective economic advantage for failure to amend as ordered within 28 days after the counts were stricken. To resolve this question, we must first consider whether the trial court properly ordered the counts stricken.

The counts contained allegations against both defendants that plaintiff had a reasonable expectation of entering into valid business relationships as an employee or consultant with other manufacturers of medical instrumentation or allied products; that defendants were aware of this expectation; that defendants intentionally uttered or published the statement regarding plaintiff's role in bribes to foreign governments; that the statement was false; and that as a result of defendants' actions, plaintiff's business expectations have been destroyed—resulting in monetary loss.

■■ Defendants have advanced two arguments against the sufficiency of these counts. First, defendant Searle contends that the counts were insufficient to state a cause of action for interference with prospective economic advantage in that plaintiff failed to allege "an interference with a prospective business relation either with specific third parties or with an identifiable class of third persons." We do not believe that the counts were defective in that regard, however. The essential allegations in an action for interference with prospective economic advantage are: "the plaintiff's reasonable expectancy of entering into a valid business relationship; the defendant's knowledge of this expectancy; an intentional interference by the defendant which prevents the expectancy from ripening into a valid business relationship; and damages to the plaintiff from such inter-ference." (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 713-14, 306 N.E.2d 549, 553, *rev'd in part on other grounds* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) None of the authorities which set forth the requirements for this cause of action state that plaintiff must allege the identity of the third party or parties by name. (See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*; *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 363, 300 N.E.2d 331, 333; 45 Am. Jur. 2d *Interference* §50 (1969).) Furthermore, in other cases involving interference with prospective economic advantage, it does not appear that the courts have objected to the failure to allege the names of the third parties. For example, in *Colucci v. Chicago Crime Com.* (1975), 31 Ill. App. 3d 802, 334 N.E.2d 461, plaintiff, an automobile dealer, brought suit against defendants, whose publications "urged the public to cease patronizing [plaintiff]; and * * * urged governmental authorities to cease doing business with [plaintiff]." (31 Ill. App. 3d 802, 811, 334 N.E.2d

461, 468.) Although the issue of the specificity of the third parties was not raised, this court in *Colucci* held that the complaint stated a cause of action for interference with prospective economic advantage. Thus, identifying the third parties as "the public" or "governmental authorities" does not appear to have disturbed the court. Similarly, in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, plaintiff alleged that defendant published an erroneous credit report on plaintiff and that consequently "plaintiff was refused credit on inventory purchases from clothing manufacturers because of the latter's belief that the plaintiff's credit rating was insufficient." (16 Ill. App. 3d 709, 711, 306 N.E.2d 549, 551.) Again, the court gave no indication that such an allegation of third parties was insufficient.

■■ In support of its contention, Searle relies heavily on *Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 357 N.E.2d 211. In that case, plaintiffs owned a tract of land which was originally zoned for multiple-family units but was then rezoned by the defendant city for a less intensive use. Plaintiffs claimed that this disrupted plans to construct a proposed 343-unit development and brought an action including a count for interference with prospective economic advantage. The trial court dismissed the count, and this court affirmed, stating:

> "Plaintiffs, however, * * * do not allege an interference with either a business relation with specific third parties or with an identifiable prospective class of third persons.
>
> In each of the cases cited by the plaintiffs [Citations] there are allegations that some specific third party was induced by a defendant to refrain from dealing with a plaintiff. Other cases which we have found are limited on their facts to situations in which a contractual arrangement with an identifiable third party is at least contemplated. [Citations.] * * * [T]he allegations contained in Count II fall far short of pleading a cause of action based on interference with a business relationship between the plaintiff and specific third parties or any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff." (43 Ill. App. 3d 400, 402-03, 357 N.E.2d 211, 214-15.)

We feel, however, that plaintiff's complaint in the case at bar meets the requirements of *Parkway Bank*. In that case, plaintiffs failed to allege the existence of any third party whatsoever but merely alleged that defendants interfered with plaintiff's prospective business advantage. It was therefore necessary for the court to require allegations of an identifiable third party in order that a valid expectancy would be properly alleged. We note in particular that the court used the term "identifiable" rather than "identified," which to us indicates that the third

party's specific identity or name is to be revealed at a subsequent time, such as at trial. Furthermore, *Parkway Bank* cited with approval several cases in which the opinions did not indicate that the third parties were alleged by name. (*Willis v. Santa Ana Community Hospital Association* (1962), 58 Cal. 2d 806, 376 P.2d 568, 26 Cal. Rptr. 640; *City of Rock Falls v. Chicago Title & Trust Co.*) Thus, in the instant case, we believe that plaintiff's description of third parties as "manufacturers of medical instrumentation or allied health care products or other products" is sufficiently specific so that these parties may be termed "identifiable." Accordingly, we hold that the fact that plaintiff did not allege these third parties by name did not render defective the counts for interference with prospective economic advantage.

■■ Defendants Searle and Dow Jones next contend, and plaintiff apparently conceded during oral argument, that the counts were insufficient in law in that they did not allege facts which showed that defendants acted with the purpose of interfering with plaintiff's prospective economic advantage. We agree. As indicated above, intention to interfere is one of the elements of a cause of action for interference with prospective economic advantage. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*; *City of Rock Falls v. Chicago Title & Trust Co.*; 45 Am. Jur. 2d *Interference* §50 (1969); Prosser, Torts §130, at 952-53 (4th ed. 1971).) Such an action is a purposely caused tort (*Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 473, 244 N.E.2d 809, 812; *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403, 357 N.E.2d 211, 215), and plaintiffs must allege facts which indicate that the defendants acted with the purpose of injuring plaintiff's expectancies (*Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403-04, 357 N.E.2d 211, 215). While in the case at bar, plaintiff alleged that defendants intentionally uttered or published the statement, he failed to allege that defendants acted with the purpose of interfering with plaintiff's prospective economic advantage. We therefore hold that the trial court properly ordered stricken the two counts for interference with prospective economic advantage.

Having upheld the trial court's action in striking the two counts for interference, we now reach the question of whether the trial court abused its discretion in dismissing with prejudice these counts for failure to amend within 28 days. We believe that it did. It appears that plaintiff needed to pursue discovery in order to determine if facts indicative of defendants' intent to interfere could be properly alleged. Defendant Searle contends that plaintiff was not entitled to commence discovery at that time, but we find no authority supporting that position. Under Illinois Supreme Court Rule 201(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 201(d)), discovery may be initiated when defendants are required to appear.

Thus, in the instant case, it is clear that plaintiff was entitled to commence discovery to search for facts establishing the requisite intent.

The trial court allowed plaintiff only 28 days in which to amend his complaint; but, under section 46 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(1)), amendments to complaints may be allowed on just and reasonable terms at any time before final judgment. When and if plaintiff discovered the requisite intent and asked leave to amend, the trial court could then, in its discretion, rule on whether the amendments should be allowed, based on the extent to which the parties would be unfairly surprised (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *Goulden v. Midwest Emery Freight System, Inc.* (1974), 21 Ill. App. 3d 901, 316 N.E.2d 246) and what would best promote the ends of justice (*Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727; *Echales v. Krasny* (1957), 12 Ill. App. 2d 530, 139 N.E.2d 767). Defendants have expressed concern that plaintiff's search for facts to determine intent may amount to a harassing "fishing expedition." We are confident that the trial court will, under its powers granted by Supreme Court Rule 201(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 201(c)) take necessary actions should abuse occur. We therefore hold that while the two counts for interference with prospective economic advantage were properly stricken, the actions were improperly dismissed at that point in time.

The order of the trial court dismissing plaintiff's counts for violation of the Deceptive Trade Practices Act and denying plaintiff leave to file amended counts to include the Consumer Fraud Act is affirmed; the order dismissing plaintiff's counts for interference with prospective economic advantage for failure to amend in 28 days is reversed and remanded for proceedings consistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

LORENZ and MEJDA, JJ., concur.