THIRD DIVISION
FILED: July 31, 2006

No. 1-05-2744

| | | |
|---|---|---|
| IMPERIAL APPAREL, LTD., CYRIL ROSENGARTEN, and PAUL ROSENGARTEN, | ) ) ) | APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| COSMO'S DESIGNER DIRECT, INC., an Illinois Corporation, and CHICAGO SUN-TIMES, INC., a Delaware Corporation, | ) ) ) ) | HONORABLE JEFFREY LAWRENCE, |
| Defendants-Appellees. | ) | JUDGE PRESIDING. |

PRESIDING JUSTICE HOFFMAN delivered the modified opinion of the court:

The plaintiffs, Imperial Apparel, Ltd. (Imperial), Cyril Rosengarten and Paul Rosengarten, appeal from an order of the circuit court dismissing their five-count complaint for failure to state a cause of action. For the reasons which follow, we affirm in part, reverse in part, and remand this cause for further proceedings.

The facts necessary to an understanding of our resolution of this appeal are not in dispute and are taken exclusively from the plaintiffs' complaint. Imperial and the defendant Cosmo's Designer Direct, Inc (Cosmo) are competitors engaged in selling discounted men's clothing. As a sales promotion, Cosmo regularly advertised suits and other items of menswear on a "3 for 1" basis. Thereafter, Imperial, in order to compete more effectively, began

1-05-2744

to advertise its own "3 for 1" sales.

On October 15, 2004, Cosmo ran a full-page advertisement in the Chicago Sun-Times which, in addition to promoting an "8 DAY BLOWOUT SALE," contained the following column of text which gives rise to this litigation:

"WARNING!

Beware of

Cheap Imitations

Up North ...

We all know, there is only one 'America' in the world and only one '3 for 1' in the Midwest...and in both cases it was the original thinking of an Italian that made them famous.  So to the shameless owners of Empire rags center, east Eden and south of quality, we say...'Start being kosher...Stop openly copying and coveting your neighbor's concepts or a hail storm of frozen matzo balls shall deluge your 'flea market style warehouse.'

Thankfully most readers, like thousands of our customers,

2

possess a taste level that can
easily decipher the quality
gap between dried cream
cheese and real Parmigiano
...or alas we would be
wasting ink.

It is laughable how with all
the integrity of the 'Iraq
Information Minister', they
brazenly attempt pulling
polyester over your eyes by
conjuring up a low rent
3 for imitation that has the
transparency of a hookers
come on...but no matter
how they inflate prices and compromise
quality, much to
their dismay, Cy and his son
Paul the plagiarist still remain
light years away from
delivering anything close to
our '3 for 1' values.

Remember, things that
sound the same might not
necessarily be alike.

Finally, it's an undisputed
fact that when it comes to
fine clothing nothing substi-
tutes for the heritage of the
land of Columbus, DaVinci

> and Armani...Hence all that
> needs to be said is that...
> 'They can at best poorly
> imitate what we create...for
> we are Italian and they are
> not!' " (Emphasis in original.)

Following the publication of Cosmo's ad, Imperial along with its president, Paul Rosengarten, and Cyril Rosengarten, one of its employees, (collectively referred to as the plaintiffs) filed the instant action against Cosmo and the Chicago Sun-Times, Inc. (Sun-Times). In counts I and II of their complaint, the plaintiffs sought recovery against both defendants on theories of defamation per se and defamation per quod, respectively. Count III was a claim for false light invasion of privacy against Cosmo only. Count IV asserted a cause of action for commercial disparagement against Cosmo and the Sun-Times. Finally, in count V, the plaintiffs sought recovery against Cosmo predicated upon a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2004)).

Both Cosmo and the Sun-Times filed motions to dismiss the plaintiffs' complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)), contending that, for a number of reasons, the claims asserted were substantially insufficient at law. The circuit court granted the defendants'

4

motions, finding that Cosmo's ad constituted "non-actionable opinion." This appeal followed.

Because this matter was disposed of at the trial level in response to the defendants' section 2-615 motions, the only question before this court is whether the dismissed counts state causes of action upon which relief could be granted. Burdinie v. Village of Glendale Heights, 139 Ill. 2d 501, 505, 565 N.E.2d 654 (1990). The issue presented is one of law, and our review is de novo. T & S Signs, Inc. v. Village of Wadsworth, 261 Ill. App. 3d 1080, 1084, 634 N.E.2d 306 (1994).

At the outset of our analysis, we wish to make it quite clear that our function is not to judge the literary merit of Cosmo's ad or the journalistic standards of a newspaper that would publish such obviously offensive material. Our function is solely to determine whether the ad is legally actionable under any of the theories pled.

In urging affirmance of the dismissal of all of the counts in the plaintiffs' complaint, the defendants argue that Cosmo's ad cannot reasonably be interpreted as asserting facts and, as a consequence, is entitled to protection under the First Amendment to the United States Constitution (U.S. Const., amend. I). For their part, the plaintiffs argue that the trial court erred in dismissing their claims as the ad can reasonably be interpreted as stating

actual facts which impute a want of integrity in the discharge of their employment duties and prejudiced them in their business.

The fact that statements might reasonably be interpreted as defamatory does not entirely resolve the issue of whether they are actionable. A determination must still be made as to whether the statements constitute protected speech under the First Amendment. Hopewell v. Vitullo, 299 Ill. App. 3d 513, 517-18, 701 N.E.2d 99 (1998). Statements which do not make factual assertions enjoy First Amendment protection and cannot form the basis of a defamation action. Milkovich v. Lorain Journal Co., 497 U.S. 1, 19, 111 L.Ed.2d 1, 110 S.Ct. 2695 (1990). However, "[t]he test to determine whether a defamatory statement is constitutionally protected is a restrictive one." Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 14, 607 N.E.2d 201 (1992). Only statements which "cannot 'reasonably [be] interpreted as stating actual facts'" are protected under the First Amendment. Milkovich, 497 U.S. at 20, quoting Hustler Magazine v. Fawell, 485 U.S. 46, 50, 99 L.Ed.2d 41, 108 S.Ct. 876 (1988); see also Kolegas, 154 Ill. 2d at 14-15. Whether a particular statement is one of fact or opinion is a question of law. Doherty v. Kahn, 289 Ill. App. 3d 544, 557, 682 N.E.2d 163 (1997).

In determining whether statements are fact or opinion, two

approaches have been employed. The Restatement (Second) of Torts sets forth the principal that statements of fact "usually concern the conduct or character of another." Restatement (Second) of Torts § 565, cmt. a (1977). The Restatement also distinguishes between "pure opinion" which enjoys First Amendment protection and "mixed opinion" which can be actionable. A pure opinion is one in which the maker states the facts upon which the opinion is based. Mixed opinions are those which, while opinion in form or content, are apparently based on facts which have not been stated or are assumed to exist. Restatement (Second) of Torts § 565, cmt. b (1977). In Ollman v. Evans, 750 F.2d 970 (D.C.Cir.1984), the court expanded upon the Restatement's approach and articulated four issues which a court should consider in determining whether a particular statement is one of fact or opinion, namely: (1) whether the statement has a precise core of meaning; (2) whether the statement is objectively verifiable; (3) whether the literary context of the statement implies that it has factual content; and (4) whether the broader social context in which the statement appears implies fact or opinion. Ollman, 750 F.2d at 979. Illinois courts appear to have embraced the Ollman approach. See Brennan v. Kadner, 351 Ill. App 3d 963, 969, 814 N.E.2d 951 (2004); Moriarty v. Greene, 315 Ill. App. 3d 225, 235, 732 N.E.2d 730 (2000). Although this test considers the context in which the

statement appears, its emphasis is on whether the statement contains objectively verifiable assertions. Milkovich, 497 U.S. at 19-21. In determining whether a statement is one of fact, we evaluate the totality of the circumstances and consider whether the statement is capable of objective verification. Piersall v. Sports Vision, 230 Ill. App. 3d 503, 510, 595 N.E.2d 103 (1992).

The Sun-Times argues that the statements in Cosmo's ad are "examples of unvarnished hyperbole" and concludes that, "[e]ven if Imperial might interpret the isolated passage 'no matter how they inflate [prices] and compromise quality' as conveying some abstract factual content, the overwhelming presence of slang and non-literal language throughout Cosmo's Ad precludes any reasonable reader from believing that Cosmo's was stating objective facts." In contrast, the plaintiffs argue that a number of the statements in the ad which impute a want of integrity in the discharge of their employment duties are capable of being proven true or false and are, therefore, not entitled to constitutional protection.

The threshold question is whether a reasonable reader would interpret Cosmo's ad as stating actual facts about the plaintiffs. Milkovich, 497 U.S. at 20; Bryson v. New America Publications, 174 Ill. 2d 77, 100, 672 N.E.2d 1207 (1996). Referring to the plaintiffs as the "shameless owners of Empire rags" and their business establishment as a "flea market style warehouse,"

8

certainly amounts to vituperative name-calling, but the comments hardly qualify as statements of objectively verifiable fact. See Pease v. International Union of Operating Engineers Local 150, 208 Ill. App. 3d 863, 870, 567 N.E.2d 614 (1991). Likening the quality comparison of the plaintiffs' goods and Cosmo's goods to the difference between dried cream cheese and "real Parmigano" might well be considered by some as a veiled ethnic slur, but again it is not capable of objective verification. However, the statements contained in the third paragraph of the ad present a more difficult question.

In the third paragraph, the individual plaintiffs' integrity is compared to that of the "Iraq Information Minister." The charge is related to Imperial's "3 for 1" sale which the ad states is an attempt to pull "polyester" over the eyes of the public. Finally, the paragraph asserts that the plaintiffs inflate the price of their clothing and compromise the quality. The statements specifically refer to the "3 for 1" sale and implicitly accuse the plaintiffs of deceiving the public as to the quality of Imperial's clothing, all under the heading of "Beware of Cheap Imitations Up North." We believe that the statements contained in the third paragraph are not pure opinion. They address both the conduct and character of the individual plaintiffs and appear to be based on facts concerning the quality of Imperial's goods which have not

been stated. Whether Imperial was selling imitation goods of inferior quality is certainly capable of objective verification. Although the statements were made in the context of a competitor's advertisement, certainly not a setting which would lead a reader to infer that the statements are factual in nature, we nevertheless believe that a reasonable reader could very well interpret Cosmo's ad as stating actual facts about the plaintiffs and the originality and quality of Imperial's goods.

Based upon the foregoing analysis, we conclude that Cosmo's ad is not entitled to First Amendment protection. We find, therefore, that the circuit court erred in concluding that the ad constituted "non-actionable opinion" and in dismissing the claims set forth in the plaintiffs' complaint on that ground.

Although we have rejected the basis upon which the trial court dismissed the plaintiffs' complaint, the defendants argue that other grounds supporting the dismissal of each count exist. Because we may affirm the trial court's judgment upon any ground warranted by the record, regardless of whether that ground was relied upon by the trial court (Material Service Corp. v. Department of Revenue, 98 Ill. 2d 382, 387, 457 N.E.2d 9 (1983)), we will address each of the defendants' other arguments in support of affirmance.

The Sun-Times argues that the plaintiffs are limited purpose

10

public figures with respect to their merchandising endeavors and, as such, in order to recover, they were required to plead and prove that the Sun-Times published Cosmo's ad with actual malice. See Kessler v. Zekman, 250 Ill. App. 3d 172, 179-85, 620 N.E.2d 1249 (1993). The underlying basis for the Sun-Time's assertion that the plaintiffs are limited purpose public figures is the fact that they advertised their goods for sale. See Steaks Unlimited , Inc. v. Deaner, 623 F.2d 264, 271-74 (3rd Cir. 1980). The Sun-Times contends that, because the plaintiffs only alleged negligence on its part, and not actual malice, their complaint failed to state any cause of action against it.

In addition to the fact that there are no allegations in the complaint supporting the proposition that the individual plaintiffs ever advertised any goods for sale, the plaintiffs argue that the mere fact that Imperial advertised its merchandise does not, without more, establish it as a limited purpose public figure. We agree.

The complaint alleges that Imperial advertised its merchandise prior to the publication of Cosmo's ad. However, there are no allegations in the complaint which would support the notion that, in doing so, Imperial thrust itself to the forefront of any particular public controversy. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974).

11

1-05-2744

Consequently, the facts pled in the complaint do not establish Imperial's status as a limited purpose public figure, and therefore the plaintiffs failure to plead actual malice on the part of the Sun-Time does not render the complaint deficient. A defendant cannot by its defamation make a plaintiff a limited purpose public figure for First Amendment purposes; rather, the plaintiff must be a limited purpose public figure prior to the alleged defamation. Rety v. Green, 546 So.2d 410, 425 (Fla.App.3 Dist. 1989); see also Waldbaum v. Fairchild Publications, Inc., 627 F.2d 1287, 1293 n. 12 (D.C.Cir 1980), cert. denied, 449 U.S. 898, 66 L.Ed.2d 128, 101 S.Ct. 266 (1980).

Cosmo having failed to advance any additional arguments in support of the dismissal of the plaintiffs' claim for false light invasion of privacy, we reverse the dismissal of count III of the complaint. However, we continue our analysis of the defendants' arguments in support of the dismissal of the remaining four counts.

Count I of the plaintiffs' complaint charged that Cosmo's ad is defamatory per se. Under Illinois law, five categories of statements are considered actionable per se, giving rise to an action for defamation without a showing of special damages. They are words that: 1) impute the commission of a criminal offense; 2) impute infection with a loathsome communicable disease; 3) impute an inability to perform or want of integrity in the discharge of

12

one's duties of office or employment; 4) prejudice a party, or impute lack of ability, in his or her trade, profession or business; and 5) impute fornication or adultery. Bryson, 174 Ill. 2d at 88-89. In this case, the plaintiffs' charged that the ad imputes a want of integrity on their part in the discharge of their employment duties and prejudices them in their business.

The defendants argue that Cosmo's ad may be innocently interpreted and, therefore, is not actionable per se. See Chapski v. Copely Press, 92 Ill. 2d 344, 352, 442 N.E.2d 195 (1982). According to the Sun Times, the ad may reasonably be interpreted as "conveying Cosmo's objection to Imperial's admitted copying of Cosmo's signature 3 for 1 sale." Cosmo asserts that the ad should be construed "as confronting Plaintiffs' admitted attempts to capitalize on Cosmo's established '3 for 1' sale." The plaintiffs argue that, when read in context, Cosmo's entire ad "can only be reasonably construed as accusing [p]laintiffs of being commercial courtesans, who entice customers in only to cheat them."

Under the innocent construction rule, statements which fall within one of the categories of words which are actionable per se are, nevertheless, non-actionable if they are reasonably capable of an innocent construction. Bryson, 174 Ill. 2d at 90. In applying the innocent construction rule, courts are required to consider the statement in context, giving the words, and their implications,

13

their natural and obvious meaning.  Bryson, 174 Ill. 2d at 90.  If so construed, a statement may be innocently interpreted, it cannot be actionable per se.  Chapski, 92 Ill. 2d at 352.  However, "[o]nly reasonable innocent construction will remove an allegedly defamatory statement from the per se category."  (Emphasis in original.) Bryson, 174 Ill. 2d at 90.  In Bryson, our supreme court held that:

"The innocent construction rule does not apply, however, simply because allegedly defamatory words are 'capable' of an innocent construction.  See Chapski, 92 Ill. 2d at 351-52 (modifying the innocent construction rule announced in John v. Tribune Co., 24 Ill. 2d 437, 442 (1962)).  In applying the innocent construction rule, courts must give the allegedly defamatory words their natural and obvious meaning.  Chapski, 92 Ill. 2d at 351-52; 33A Ill L. & Prac. Slander & Libel §12 (1970). Courts must therefore interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader.  33A Ill L. & Prac. Slander & Libel §12 at 25 (1970).  When a defamatory meaning was clearly intended and conveyed, this court will not strain to interpret allegedly defamatory words in their mildest and most

14

inoffensive sense in order to hold them nonlibellous under the innocent construction rule." 174 Ill. 2d at 93.

Whether a statement can be innocently interpreted is a question of law for the court to decide. <u>Chapski</u>, 92 Ill. 2d at 352.

In this case, when we consider Cosmo's ad in its entirety, giving the words and implications their natural and obvious meaning, it is clear that the ad conveys much more that a mere objection to Imperial's copying of Cosmo's "3 for 1" sale. The ad warns the reader against imitation products and accuses the plaintiffs of deceiving the public as to the quality of Imperial's clothing and inflating prices. The innocent construction rule does not require a court to strain to find an innocent meaning for words when, as in this case, the defamatory meaning is far more reasonable. <u>Bryson</u>, 174 Ill. 2d at 94. For this reason, we reject the defendants' argument that Cosmo's ad can be reasonably innocently construed.

The defendants also argue that the dismissal of count I should be affirmed because Cosmo's ad may be construed as not referring to the plaintiffs. They contend that a publication which does not mention the plaintiff by name cannot be defamatory <u>per</u> <u>se</u>. See <u>Barry Harlem Corp. v. Kraff</u>, 273 Ill. App. 3d 388, 391, 652 N.E.2d 1077 (1995). The plaintiffs argue that, although the ad does not

15

name Imperial or use the last names of the individual plaintiffs, it is nonetheless actionable per se as third parties reasonably understood the statements contained therein to refer to the plaintiffs.

In Chapski, our supreme court held that, if a statement may "reasonably be interpreted as referring to someone other than the plaintiff[,] it cannot be actionable per se." Chapski, 92 Ill. 2d at 352. However, in Bryson, the supreme court declined to dismiss an action involving an article which used only the plaintiff's last name, stating that it was unable to "find, as a matter of law, that no reasonable person would believe that the article was about the plaintiff." Bryson, 174 Ill. 2d at 97. The standards articulated by the supreme court in these two cases are entirely different. It is one thing to say that a statement might reasonably be interpreted as referring to someone other than the plaintiff (see Chapski, 92 Ill. 2d at 352) and quite another thing to say that no reasonable person would believe that the statement was about the plaintiff (see Bryson, 174 Ill. 2d at 97).

If we were to apply the Bryson standard, we would reverse the dismissal of count I because we would be unable to find, as a matter of law, that no reasonable person would believe that Cosmo's ad was about the plaintiffs. As the plaintiffs argue, the ad gives a geographical location of the subject establishment, "east of

16

1-05-2744

Eden," which corresponds to Imperial's location east of the Edens expressway. Additionally, as pled in the complaint, on the date that the ad was published, the individual plaintiffs received phone calls from people who read the ad and understood it to refer to the plaintiffs. However, if we apply the standard articulated in Chapski, we must affirm the dismissal of count I of the plaintiffs' complaint. Cosmo's ad does not mention Imperial by name and, although it refers to "Cy and his son Paul," it never mentions their last names. On its face, the ad could reasonably be interpreted as referring to some entity named "Empire" owned by two individuals named Cy and Paul. Extrinsic facts and circumstances are pled in the plaintiffs' complaint to establish that the statements in the ad refer to them. See Barry Harlem Corp., 273 Ill. App. 3d at 391-93; Schaffer v. Zekman, 196 Ill. App. 3d 727, 731-733, 554 N.E.2d 988 (1990).

The standard applied in Chapski was recently reaffirmed by the Supreme Court in Solaia Technology v. Specialty Publishing Co., No. 100555, slip op. at 18 (Ill. June 22, 2006), and, as a consequence, we are compelled to employ it. Because the statements in Cosmo's ad do not refer to Imperial by name or give the last names of the individual plaintiffs, they could reasonably be interpreted as referring to someone other than the plaintiffs. For this reason, the statements are not actionable per se, and we affirm the

17

dismissal of Count I of the plaintiffs' complaint.

Next, the defendants argue that count II, the plaintiffs' claim for defamation per quod, was properly dismissed because special damages were not adequately pled. The plaintiffs argue that they satisfied their pleading requirement in this regard by alleging that Imperial's sales decreased from the month preceding the publication of Cosmo's ad and also as compared to the same period in the previous year and by alleging that the individual plaintiffs suffer "substantial pain."

In order to state a cause of action for defamation per quod, special damages must be alleged with particularity. Barry Harlem Corp., 273 Ill. App. 3d at 394. General allegations of damage to one's health or reputation, economic loss, or emotional distress are insufficient to satisfy the pleading requirement in such an action. Taradash v. Adelet/Scott-Fetzer Co., 260 Ill. App. 3d 313, 318, 628 N.E.2d 884 (1993).

In this case, the complaint alleged that Cosmo's ad "humiliated and embarrassed" the individual plaintiffs and "caused them substantial pain." As to Imperial, the complaint alleged that:

> "The Ad proximately injured Imperial's sales. During the weekend and the weeks immediately following the publication of the Ad, Imperial's sales decreased

18

> from the preceding month and as compared to the same period during 2003.
>
> ***
>
> The immediate decline in Imperial's business following the publication of the Ad resulted from the defamation therein."

Nothing further is alleged in the complaint relating to the injuries suffered or damages sustained by any of the plaintiffs.

Clearly, the allegations as to the injuries suffered by the individual plaintiffs are general in nature and fail to satisfy their burden to plead actual damages of a pecuniary nature. Bryson, 174 Ill. 2d at 87-88; Kurczaba v. Pollock, 318 Ill. App. 3d 686, 694-95, 742 N.E.2d 425 (2000). We find, therefore, that count II of the complaint fails to state a cause of action in favor of the individual plaintiffs for defamation per quod, and on that basis affirm the dismissal of count II as to the plaintiffs Cyril Rosengarten and Paul Rosengarten.

The defendants argue that Imperial's damage allegations are also general in nature because the complaint fails to allege with particularity which potential customers were deterred from purchasing Imperial's merchandise. See Salamone v. Hollinger International, Inc., 347 Ill. App. 3d 837, 844, 807 N.E.2d 1086 (2004). We disagree.

19

1-05-2744

In Salamone, the plaintiff alleged, on information and belief, that repeat customers of his grocery store ceased patronizing the establishment after the defamatory article was published. Salamone, 347 Ill. App. 3d at 844. In concluding that the plaintiff failed to adequately allege special damages, the Salamone Court noted that he failed to allege "actual monetary loss from a lack of business" and "failed to allege with particularity which members of the community have ceased *** patronizing his store." Salamone, 347 Ill. App. 3d at 844. We believe, however, that the instant case is factually distinguishable from Salamone. Imperial alleged an actual monetary loss as a consequence of Cosmo's ad. As for the complaint's failure to allege with particularity which potential customers were deterred from purchasing Imperial's merchandise as a result of Cosmo's ad, we do not believe that such specificity is required.

Where, as in this case, there has been wide dissemination of the disparaging material to persons unknown and the plaintiff is in the business of offering goods for sale to the general public, it is obviously impossible for such a plaintiff to specifically identify the potential customers who, as a result of the defamatory material, did not purchase its goods. While we have no quarrel with the proposition that a plaintiff in a per quod action must plead special damages with specificity, we nevertheless believe

20

that a plaintiff is only obligated to be as specific as it is reasonable to require. See W. Keeton, Prosser and Keeton on Torts §128, at 972-73 (5th ed. 1984). In a case such as this where a plaintiff claims a decline in sales to the general public caused by defamatory material published in a major newspaper, we believe that special damages are sufficiently alleged by asserting a decline in sales as compared to prior periods. Imperial has alleged that its sales decreased both from the month preceding the publication of Cosmo's ad and as compared to the same period during the prior year; and, in our opinion, satisfied its burden of pleading special damages with specificity. For these reasons, and the reasons stated earlier, we reverse the dismissal of Imperial's defamation per quod claim as pled in count II of the complaint.

Next, we address the defendants' argument that commercial disparagement is not a viable cause of action in this State. Relying primarily upon the holding in Becker v. Zellner, 292 Ill. App. 3d 116, 128, 684 N.E.2d 1378 (1997), they assert that no such common law cause of action exists. We disagree and respectfully decline to follow Becker on this point.

In arriving at its conclusion that Illinois does not recognize a cause of action for commercial disparagement, the Becker Court relied upon its own opinion in Kolengas v. Heftel Broadcasting Corp., 217 Ill. App. 3d 803, 810, 578 N.E.2d 299 (1991), aff'd in

21

part & rev'd in part on other grounds, 154 Ill. 2d 1, 607 N.E.2d 201 (1992). In turn, the Kolengas Court relied upon a footnote appearing in American Pet Motels, Inc. v. Chicago Veterinary Medical Assn., 106 Ill. App. 3d 626, 633 n. 2, 435 N.E.2d 1297 (1982). Kolengas, 217 Ill. App. 3d at 810. The statement appearing in American Pet Motels to the effect that there is no Illinois cause of action for commercial disparagement is pure dicta and rests entirely upon an unsupported and unexplained holding in National Educational Advertising Services, Inc. v. Cass, 454 F.Supp. 71, 73 (N.D.Ill.1977). However, even the Federal District Court for the Northern District of Illinois has criticized its own decision in National Educational Advertising Services, Inc. and has concluded that commercial disparagement is, in fact, a viable action in Illinois. See Appraisers Coalition v. Appraisal Institute, 845 F.Supp. 592, 610 (N.D.Ill.1994); Richard Wolf Medical Instruments Corp. v. Dory, 723 F.Supp. 37, 42 (N.D.Ill.1989).

Contrary to the holding in Becker and the cases upon which it relies, we believe that Illinois recognizes commercial disparagement as a tort separate and distinct from the tort of defamation. A defamation action may lie when the integrity of a business has been impugned; whereas, an action for commercial disparagement lies when the quality of its goods is demeaned.

Crinkley v. Dow Jones & Co., 67 Ill. App. 3d 869, 876,  385 N.E.2d 714, (1979).  In point of fact, Illinois has long recognized commercial disparagement as a distinct tort.  See Montgomery Ward & Co. v. Department Store Employees of America, C.I.O., 400 Ill. 38, 50, 79 N.E.2d 46 (1948).  Moreover, when, as in this case, statements impugn the quality of goods and the integrity of a business, both an action for defamation and an action for commercial disparagement may lie.  Crinkley, 67 Ill. App. 3d at 877.

For the reasons stated, we conclude that the trial court erred in dismissing count IV of the complaint, Imperial's action for commercial disparagement, and we reverse its judgment in that regard.

Finally, we address Cosmo's argument that count V, the consumer fraud claim, fails to state a cause of action because it contains no allegation that Imperial was in anyway deceived by its ad.  As Cosmo correctly asserts, in  Shannon v. Boise Cascade Corp., 208 Ill. 2d 517, 525, 805 N.E.2d 213 (2004), our supreme court held that, since the deceptive advertising at issue did not deceive the plaintiff, no claim under the Consumer Fraud Act could be maintained.  See also Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 155, 776 N.E.2d 151 (2002).  However, the cases upon which Cosmo relies involved actions by, or on behalf of, consumers

against an entity that was accused of deceptive advertising. Shannon, 208 Ill. 2d at 520; Oliveira, 201 Ill. 2d at 137; see also County of Cook v. Philip Morris, Inc., 353 Ill. App. 3d 55, 57, 817 N.E.2d 1039 (2004). This case is readily distinguishable as it involves an action by a business whose goods were disparaged.

Section 10a of the Consumer Fraud Act creates a private cause of action in favor of any natural person or corporation (see 815 ILCS 505/1(c) (West 2004)) who suffers actual damages as a result of a violation of the act. 815 ILCS 505/10a (West 2004). Section 2 provides that the act is violated by the use of any practice described in section 2 of the Uniform Deceptive Trade Practices Act. 815 ILCS 505/2 (West 2004). One of the practices described in section 2 of the Uniform Deceptive Trade Practices Act is "disparag[ing] the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2(8) (West 2004). Imperial alleged such a practice on the part of Cosmo and damages suffered as a result. As the plaintiffs correctly argue, nothing in the Consumer Fraud Act requires that a competitor-plaintiff be deceived by the false representation. Causation necessary to support an action under the Consumer Fraud Act in such circumstances is established by pleading and proving that the false representation was addressed to the market and caused injury to the competitor-plaintiff. See Empire Home Services, Inc. v. Carpet

24

1-05-2744

America, Inc., 274 Ill. App. 3d 666, 669-70, 653 N.E.2d 852 (1995); Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 190 Ill. App. 3d 524, 533-34, 546 N.E.2d 33 (1989).  We reject Cosmo's argument that, to state a cause of action under the Consumer Fraud Act, Imperial was required to allege that it relied upon the ad. For the reasons stated, we reverse the trial court's dismissal of count V of the plaintiffs' complaint.

In summary, we: affirm the dismissal of count I; affirm the dismissal of count II as to the plaintiffs Cyril Rosengarten and Paul Rosengarten; reverse the dismissal of counts III, IV, and V; reverse the dismissal of count II as to the plaintiff Imperial; and remand this cause to the circuit court for further proceedings.

Affirmed in part, reversed in part and remanded.

KARNEZIS and ERICKSON, JJ., concur.