Docket No. 103331.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

IMPERIAL APPAREL, LTD., *et al.*, Appellees, v. COSMO'S
DESIGNER DIRECT, INC., *et al.* Appellants.

*Opinion filed February 7, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with
opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke
concurred in the judgment and opinion.

Chief Justice Thomas took no part in the decision.

## OPINION

Imperial Apparel, Ltd. (Imperial); its owner, Paul Rosengarten;
and an Imperial employee named Cyril Rosengarten brought an action
in the circuit court of Cook County against Cosmo's Designer Direct,
Inc. (Cosmo's), and the Chicago Sun-Times (the Sun-Times) alleging
that an advertisement for Cosmo's published by the Sun-Times
constituted defamation *per se*, defamation *per quod*, false light
invasion of privacy and commercial disparagement. Imperial and the
Rosengartens further alleged that Cosmo's conduct violated the
Consumer Fraud and Deceptive Business Practices Act (the Consumer
Fraud Act) (815 ILCS 505/1 *et seq*. (West 2004)). The Sun-Times
filed a motion pursuant to section 2–615 of the Code of Civil

Procedure (735 ILCS 5/2–615 (West 2004)) seeking dismissal of the defamation *per se*, defamation *per quod* and commercial disparagement counts. Cosmo's, in turn, filed its own motion under section 2–615 asking that the complaint be dismissed in its entirety. The motions filed by the Chicago Sun-Times and Cosmo's were granted, and the complaint filed by Imperial and the Rosengartens was dismissed with prejudice.

Imperial and the Rosengartens appealed. The appellate court affirmed dismissal of the defamation *per se* count. It also affirmed dismissal of the defamation *per quod* count as to the Rosengartens. In all other respects, the judgment of the circuit court was reversed, and the cause was remanded for further proceedings. 367 Ill. App. 3d 48. We granted Cosmo's petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, the judgment of the appellate court is affirmed in part and reversed in part. The judgment of the circuit court dismissing plaintiff's complaint with prejudice is affirmed.

Our understanding of the relevant facts in this case is defined by the posture in which the matter comes before us. Where, as here, the legal sufficiency of a complaint has been attacked under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)), a court must accept as true all well-pleaded facts contained in the complaint and all reasonable inferences that can be drawn from those facts. The court must also interpret the allegations in the complaint in the light most favorable to the plaintiff. *Tuite v. Corbitt*, 224 Ill. 2d 490, 509-10 (2006).

The complaint in this case alleges that Cosmo's and Imperial are rivals in the highly competitive business of discounted men's clothing. Imperial is run by Paul Rosengarten and has a store in Lincolnwood, east of the Edens Expressway, and north of the City of Chicago. Cosmo's, named for its president, Cosmo Laudadio, maintains its business in Villa Park, which is just west of the City. The companies' stores are less than 20 miles apart and were opened within two years of one another in the late 1990s. The Rosengartens are Jewish. Laduadio is of Italian descent.

Cosmo's prides itself on being the "home of the original 3 for 1" promotion. According to Imperial's complaint, that promotion was designed to "create the appearance that [the company] is selling three items of clothing for the regular price of one item." In the particular

advertisement that gave rise to this litigation, Cosmo's claimed, for example, that customers could buy three "microtech suits" for $199, three "fine hand tailored wool suits" for $299, or three "super 100's wool Italian suits" for $499. Cosmo's "warehouse" was open to the public four days a week, but offered "1000's upon 1000's of values ... Cash & Credit Cards Only ... No Checks." "Fine leather shoes" were offered for $18 a pair, limit three, while "fully tailored" slacks were only $15 a pair and silk ties were a mere $5 apiece.

Imperial reviewed Cosmo's advertisements and determined that its regular prices for individual suits and other items of menswear were generally lower than the "3 for 1" promotions offered by Cosmo's. Imperial alleged that in order "to compete more effectively, and to educate the public that its prices [were] generally lower" than Cosmo's "3 for 1" promotions, it ran advertisements of its own offering some of its products on a "3 for 1" basis, but at prices lower than those advertised by Cosmo's. In response to Imperial's "3 for 1" ads, Cosmo's took out a full-page ad in the October 15, 2004, edition of the Chicago Sun-Times. Most of the ad was unremarkable. It touted an "8 Day Blowout Sale" in which a "$3,000,000 Inventory Backup Must Be Liquidated" due to a delay in the opening of its Chicago showroom. The store's location and hours were given, along with listings of various clothing items offered for sale, some of which we just described, and promises of "amazing door busters." The text was superimposed on a background photograph showing three tiers of men's tailored suits hanging inside a showroom.

This aspect of Cosmo's ad was uncontroversial. What made Imperial and the Rosengartens decide to sue was companion text set out in columnar form along the right side of the ad under a headline printed in large boldface type reading, "WARNING! Beware of Cheap Imitators Up North ... ." The text read:

> "We all know, there is only one 'America' in the world and only one '3 for 1' in the Midwest ... and in both cases it was the original thinking of an Italian that made them famous. So to the shameless owners of Empire rags center, east Eden and south of quality, we say ... 'Start being kosher ... Stop openly copying and coveting your neighbor's concepts or a hail storm of frozen matzo balls shall deluge your 'flea market style warehouse.'

-3-

Thankfully most readers, like thousands of our customers, possess a taste level that can easily decipher the quality gap between dried cream cheese and real Parmigiano ... or alas we would be wasting ink.

It is laughable how with all the integrity of the 'Iraq Information Minister', they brazenly attempt pulling polyester over your eyes by conjuring up a low rent 3 for imitation that has the transparency of a hooker[']s come on ... but no matter how they inflate prices and compromise quality, much to their dismay, Cy and his son Paul the plagiarist still remain light years away from delivering anything close to our '3 for 1' values.

Remember, things that sound the same might not necessarily be alike.

Finally, it's an undisputed fact that when it comes to fine clothing nothing substitutes for the heritage of the land of Columbus, DaVinci and Armani ... Hence all that needs to be said is that ... 'They can at best poorly imitate what we create ... for we are Italian and they are not!' " (Emphasis in original.)

This ad was written by Cosmo's, which paid the Sun-Times to print it. Imperial and the Rosengartens claimed, on information and belief, that the paper has a daily circulation in excess of 450,000. The ad appeared on page 13 of the newspaper's October 15 edition. The column of text was not specifically identified as an advertisement, although it is doubtful that anyone would have mistaken it for anything other than that. The day on which the ad appeared was a Friday. According to Imperial's complaint, "Fridays are important for retail advertising. The bulk of retail sales of menswear occurs on the weekend, and Friday ads are an important method used to boost sales."

Although the entity referred to in the ad was identified as "Empire rags center," Imperial and the Rosengartens contended that "[t]he public in general, and menswear consumers in particular, would reasonably understand that the Ad was about Imperial." That is so, according to the complaint, for a number of reasons. Among these are the relationship between the word "empire" and the term "imperial,"

the reference to "east Eden" when Imperial is located east of the Edens Expressway, and the fact that Paul Rosengarten was mentioned by his actual given name and Cyril was referred to by his nickname, "Cy." As evidence that the ad was understood to refer to Imperial and the Rosengartens, the complaint alleged that on the day the ad was published, Imperial and the Rosengartens "received numerous phone calls from individuals who had read the Ad and understood that the Ad was about *** them."

Imperial and the Rosengartens asserted that Cosmo's ad damaged the reputations of the company and of the Rosengartens and falsely disparaged the goods they sold. According to Imperial and the Rosengartens, this was done deliberately. In their view, Cosmo's purchased the ad "in order to injure Imperial's business," "to lure customers to Cosmo's under false pretenses," and to deter "past and potential customers from buying menswear from Imperial." Imperial and the Rosengartens alleged that the ad had the intended effect. Specifically, they contended that "during the weekend and weeks immediately following the publication of the Ad, [its] sales decreased from the preceding month as compared to the same period during 2003." Imperial further charged that in a subsequent ad purchased by Cosmo's, Cosmo's boasted that during the period immediately following publication of the October 15 ad, it enjoyed some of the biggest sales in its history.

According to Imperial and the Rosengartens, the ad caused more than financial harm. It humiliated and embarrassed the Rosengartens, who claim to have experienced "substantial pain" by being "publicly vilified by anti-semitic slurs, by being compared to whores, and by the accusations of a lack of business integrity." Imperial and the Rosengartens alleged that because of the ad, they were "lowered *** in the estimation of the community."

Imperial and the Rosengartens sought redress for the foregoing injuries by bringing an action for damages against Cosmo's and the Sun-Times. Their complaint contained five counts. Counts I and II, which were directed against both Cosmo's and the Sun-Times, alleged different forms of defamation. Count I charged defamation *per se*. Count II was predicated on defamation *per quod*. Count III sought recovery from Cosmo's alone and was premised on the tort theory commonly referred to as "false light." Count IV asserted claims

against Cosmo's and the Sun-Times for commercial disparagement. Count V, brought on behalf of Imperial, but not the Rosengartens, and seeking recovery against Cosmo's, but not the Sun-Times, alleged a violation of section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2004)).

All five counts were dismissed with prejudice by the circuit court pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)). The basis for the circuit court's judgment was that the statements in the ad, while in poor taste, consisted of nonactionable statements of opinion protected by the first amendment to the United States Constitution (U.S. Const., amend. I).

The appellate court affirmed in part and reversed in part. It agreed that certain of the statements in the ad were constitutionally protected, nonactionable speech, but found otherwise with respect to the third paragraph. That paragraph is the one which compared the plaintiffs' integrity to that of the "Iraq Information Minister," charging that they "brazenly attempt pulling polyester over [customers'] eyes by conjuring up a low rent three for imitation that has the transparency of a hooker[']s come on." The paragraph further indicated that Imperial and the Rosengartens "inflate[d] prices and compromise[d] quality." In the appellate court's view, a reasonable reader could very well interpret this portion of the ad as stating actual facts about the plaintiffs and the originality and quality of Imperial's goods. The appellate court therefore concluded that the ad was not entitled to first amendment protection. 367 Ill. App. 3d at 53-54.

After rejecting the circuit court's rationale for dismissal of the complaint, the appellate court proceeded to consider additional arguments raised by Cosmo's and the Sun-Times in support of the circuit court's judgment. The court first took up the question of whether the plaintiffs constituted "limited purpose public figures" with respect to their merchandising endeavors and, as such, should have been required to plead and prove that the Sun-Times published the ad with actual malice. The court held that they were not. This being the only alternative basis advanced by the defendants in support of the dismissal of count III of the complaint, which alleged "false light," the appellate court held that count III should not have been dismissed. 367 Ill. App. 3d at 55.

The appellate court next reviewed the viability of count I, alleging defamation *per se.* In undertaking its analysis, the court first rejected defendants' argument that the ad was not actionable because it was reasonably capable of an innocent construction. 367 Ill. App. 3d at 56-57. The court held, however, that because the statements in the ad did not refer to Imperial by name or give the last names of the Rosengartens and because the court believed the statements could reasonably have been interpreted as referring to someone other than the plaintiffs, the statements could not be found actionable *per se.* It therefore affirmed the dismissal of count I. 367 Ill. App. 3d at 57-58.

The appellate court likewise affirmed dismissal of count II of the complaint, alleging defamation *per quod*, with respect to the Rosengartens. Its decision was based on the principle that an action for defamation *per quod* requires that the plaintiff plead and prove special damages, *i.e.*, actual damages of a pecuniary nature. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). Such damages were alleged to have been sustained by Imperial–its business declined–but no claim of special damages was made as to Paul and Cyril Rosengarten. Although they contended that their reputations were harmed and that they were vilified, humiliated, and embarrassed, there is no indication in the complaint that such affronts ever translated into actual damages of a pecuniary nature. The appellate court therefore concluded that count II of plaintiffs' complaint had failed to state a cause of action for defamation *per quod* against the Rosengartens. 367 Ill. App. 3d at 58.

With the exception of these two claims (count I as to all parties and count II with respect to the Rosengartens), the appellate court reversed the circuit court's judgment and remanded for further proceedings. 367 Ill. App. 3d 48. In so doing, the appellate court rejected defendants' argument that count IV of plaintiffs' complaint was properly dismissed because the tort of commercial disparagement is not a viable cause of action in Illinois. 367 Ill. App. 3d at 59-60.

Now that the matter is before our court, Cosmo's and the Sun-Times assert that the appellate court should not have reversed any portion of the circuit court's judgment and that the circuit court's judgment dismissing all counts of the complaint should be affirmed in full. They contend that the statements made in the October 15 ad were constitutionally protected and that the appellate court erred in

concluding otherwise. Because the statements were constitutionally protected, defendants assert, none of the five counts asserted by Imperial and the Rosengartens are viable and they were all properly dismissed by the circuit court.

Cosmo's and the Sun-Times further argue, in the alternative, that even if the Constitution does not shield them from plaintiffs' claims, we should nevertheless uphold the circuit court's decision to dismiss, in full, the claims asserted against them in counts II (defamation *per quod*), III (false light), and IV (commercial disparagement). According to Cosmo's and the Sun-Times, count II is fatally infirm in its entirety because it did not adequately plead special damages as to any of the plaintiffs, not simply the Rosengartens. Cosmo's and the Sun-Times contend that count III must fail for the same reason. In addition, they assert there is no set of facts that would permit plaintiffs to recover under count IV because Illinois does not and should not recognize a cause of action for commercial disparagement.

Imperial and the Rosengartens seek cross-relief. They argue we should reverse that aspect of the appellate court's judgment affirming dismissal of the defamation *per se* claim set forth in count I. In their view, the appellate court's construction of the ad was strained and unreasonable and conflicts with precedent from this court. They do not challenge the appellate court's determination that the claim for defamation *per quod* was properly dismissed as to the Rosengartens and, in all other respects, urge us to affirm the appellate court's judgment.

The standards governing our review are familiar. A motion to dismiss under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)) attacks the legal sufficiency of a complaint. *Tuite v. Corbitt*, 224 Ill. 2d 490, 509 (2006). A cause of action should not be dismissed under section 2–615 unless it is clear that no set of facts can be proved under the pleadings that would entitle the plaintiff to recover. *Tuite v. Corbitt*, 224 Ill. 2d at 510. Whether a complaint should be dismissed under section 2–615 presents a question of law, which we review *de novo*. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147-48 (2002).

In assessing the legal sufficiency of the plaintiffs' complaint in this case, we begin with the uncontroverted fact that Imperial and Cosmo's are competitors in a highly competitive business. Under

Illinois law, commercial competitors are privileged to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 15 (2007). The privilege to compete does not, however, encompass the use of improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement. See *Cohabaco Cigar Co. v. United States Tobacco Co.*, No. 98–C–1580 (N.D. Ill. October 29, 1998). Ultimately, what Imperial and the Rosengartens are arguing in this case is that the ad taken out by Cosmo's in the October 15, 2004, edition of the Sun-Times crossed the line from legitimate competition to actionable misconduct.

As we have described, Cosmo's and the Sun-Times' principal response to plaintiffs' claim is that the statements made in the ad were constitutionally protected and therefore cannot be the basis for an action for damages. Analysis of this argument is an appropriate starting point for our review because it is potentially dispositive of the case. If, as defendants contend, the content of the ad is protected by the first amendment, the ad not only cannot serve as the predicate for plaintiffs' defamation claims, it cannot serve as the basis for their "false light," commercial disparagement, or Consumer Fraud Act claims. See *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 287 (1981); *Brennan v. Kadner*, 351 Ill. App. 3d 963, 971 (2004); *Soderland Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 620 (1995); *In re Estate of Albergo*, 275 Ill. App. 3d 439, 451 (1995).

The first amendment to the United States Constitution states, in part, that "Congress shall make no law *** abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. Although the amendment, by its terms, addresses only the power of Congress, the United States Supreme Court has long held that its provisions are also binding on the states through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). See, *e.g.*, *Murdock v. Pennsylvania*, 319 U.S. 105, 108, 87 L. Ed. 1292, 1295, 63 S. Ct. 870, 872 (1943).

The protections afforded by the first amendment to freedom of speech and the press were designed to assure " 'unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' " (Emphasis omitted.) *Miller v. California*, 413 U.S. 15, 34-35, 37 L. Ed. 2d 419, 437, 93 S. Ct. 2607, 2620-21 (1973), quoting *Roth v. United States*, 354 U.S. 476, 484, 1 L. Ed. 2d 1498, 1506, 77 S. Ct. 1304, 1308 (1957). Underlying this purpose is the belief that "the best test of truth is the power of the thought to get itself accepted in the competition of the market." *Abrams v. United States*, 250 U.S. 616, 630, 63 L. Ed. 1173, 1180, 40 S. Ct. 17, 22 (1919) (Holmes, J., dissenting). While political speech lies at the core of first amendment protections, those protections also embrace commercial speech, including advertising. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495-500, 134 L. Ed. 2d 711, 723–26, 116 S. Ct. 1495, 1504-07 (1996). In addition, the provisions of the first amendment have likewise been interpreted as limiting the reach of state defamation laws. See *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755, 86 L. Ed. 2d 593, 600, 105 S. Ct. 2939, 2943 (1985).

Whether and to what extent the Constitution constrains state defamation law depends on the circumstances of the case at issue. Two considerations must be taken into account. The first is whether the plaintiff is a public figure or official or is, instead, merely a private figure. The second is whether the speech at issue is of public concern. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775, 89 L. Ed. 2d 783, 791-92, 106 S. Ct. 1558, 1563 (1986).

The question of whether the plaintiffs are public or private figures affects the standard of liability. If the plaintiffs are public figures or officials, the first amendment precludes them from obtaining redress in a defamation action unless they can prove that the allegedly defamatory statements were made with actual malice. *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 418-19 (1988), citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). If the plaintiffs are private figures, the first amendment does not normally impose any restriction on the liability standards states may adopt. The key exception is when a media defendant is involved. The first amendment does not permit the imposition of liability on a publisher or broadcaster of a defamatory

falsehood injurious to a private person without a showing of fault, although the degree of fault required is left to the states to determine. See *Rosner v. Field Enterprises, Inc.*, 205 Ill. App. 3d 769, 784 (1990), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). In Illinois, ordinary negligence will suffice. See *Edwards v. Paddock Publications, Inc.*, 327 Ill. App. 3d 553, 562 (2001).

In contrast to a plaintiff's status, the content of the challenged speech, specifically, whether it addresses a matter of public concern, does not determine the standard of liability. *Troman v. Wood*, 62 Ill. 2d 184, 195-96 (1975) (rejecting public interest criterion for determining liability standard); see *In re Factor VIII or IX Concentrate Blood Products Litigation*, 25 F. Supp. 2d 837, 847 (N.D. Ill. 1998) (libel suits are not automatically subject to heightened standard articulated by *New York Times Co. v. Sullivan* simply because they involve matters of public concern). Under current first amendment doctrine, the question of whether the speech addresses a matter of public concern bears on the standards that must be satisfied in order to recover punitive damages. Where the cause of action is based on defamatory statements concerning a matter of public concern, punitive damages may not be imposed absent a showing of actual malice. Where the defamatory statements involve a purely private matter, by contrast, an award of punitive damages is not dependent upon actual malice being established. See *Mullen v. Solber*, 271 Ill. App. 3d 442, 445 (1995).

Whether speech addresses a matter of public concern is relevant for another reason as well. When the speech addresses a matter of public concern and the claim is brought against a media defendant, such as a newspaper, the first amendment requires the plaintiff to bear the burden of showing falsity as well as fault before recovering damages. There can be no presumption that the defamatory statement is false. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16, 111 L. Ed. 2d 1, 16, 110 S. Ct. 2695, 2704 (1990).

In the case before us, neither Imperial nor the Rosengartens are alleged to be public officers of any kind. Cosmo's and the Sun-Times have offered nothing that would support characterization of Imperial or anyone affiliated with it, including the Rosengartens, as a public

figure for this or any purpose.[1] In addition, no claim has been made that the statements made in the disputed advertisement addressed a matter of public concern. Under the principles we have just discussed, the special standards for fault, falsity, and punitive damages imposed by the first amendment in defamation actions therefore have no application to the claims asserted by Imperial and the Rosengartens against Cosmo's. Those claims are subject to the normal common law fault, falsity and punitive damage principles followed in Illinois in defamation cases. Because it is a media defendant, the Sun-Times is protected by the special first amendment standard requiring a showing of fault, but because Illinois does not impose liability without fault in defamation cases and thus comports with that standard, the standard has no effect on resolution of this litigation.

When the circuit court granted the motions to dismiss filed by Cosmo's and the Sun-Times in this case, it did not address any of the aspects of first amendment jurisprudence we have just discussed. Instead, it focused on the character of the assertions contained in the ad to discern whether they constituted statements of actual fact or were merely expressions of opinion. The court took this approach on the assumption that opinions are protected by the first amendment and cannot serve as the predicate for defamation claims.

The circuit court's analysis was not entirely correct. There is no separate constitutional privilege for opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. at 21, 111 L. Ed. 2d at 19, 110 S. Ct. at 2707; see *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969 (2004). Accordingly, as we recently explained in *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581 (2006), and as the appellate court in this case recognized, the fact that a statement is phrased in the form of an opinion does not cloak it with first amendment protection. Even when presented as apparent opinion or

---

[1]As indicated earlier in this opinion, the Sun-Times did attempt to persuade the appellate court that Imperial and the Rosengartens should be regarded as "limited purpose public figures with respect to their merchandising endeavors." 367 Ill. App. 3d at 54. The appellate court rejected that argument (367 Ill. App. 3d at 55), and the Sun-Times has not pursued it in our court.

rhetorical hyperbole, a statement may constitute actionable defamation.

While the circuit court's analysis was imperfect, the basis for its approach was sound. In addition to governing standards regarding fault, falsity, and punitive damages, the first amendment does impose limits on the type of speech which may be the subject of state defamation actions. *Milkovich v. Lorain Journal Co.*, 497 U.S. at 16, 111 L. Ed. 2d at 16, 110 S. Ct. at 2704. Specifically, the first amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts. See, *e.g.*, *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1157 (C.D. Cal. 2005) (parties associated with corporation could not sue shareholder for defamation based on his criticism of them "as the biggest crooks on the planet" because, when viewed in context, it was the type of exaggerated, figurative and hyperbolic speech that the first amendment protects); *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997) (because of the first amendment, Wal-Mart's reference to business competitor as "trashy," while unflattering and uncomplimentary, cannot serve as the basis for defamation claim); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284-86, 41 L. Ed. 2d 745, 761-63, 94 S. Ct. 2770, 2781-82 (1974) (use of the word "traitor" to define a worker who crossed a picket line not actionable); *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13-14, 26 L. Ed. 2d 6, 14, 90 S. Ct. 1537, 1541-42 (1970) (newspaper's characterization of a developer's negotiating position as "blackmail" not defamatory as a matter of federal constitutional law–the word was simply an epithet and, under the circumstances, did not suggest commission of a crime); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992) (calling play "a rip-off, a fraud, a scandal, a snake-oil job" was mere hyperbole and, thus, constitutionally protected).

The test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact. In applying this test we are guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Solaia Technology, LLC v.*

-13-

*Specialty Publishing Co.*, 221 Ill. 2d at 581. The statement is evaluated from the perspective of an ordinary reader, but whether or not a statement is a factual assertion that could give rise to a defamation claim is a question of law for the court. *Brennan v. Kadner*, 351 Ill. App. 3d at 969; *Lott v. Levitt*, 469 F. Supp. 2d 575, 584-85 (N.D. Ill. 2007).

The principle that an allegedly defamatory statement is protected by the first amendment unless the plaintiff shows that the statement is factual has been found to apply to three types of actions: those brought by public officials, those brought by public figures, and those brought by private individuals against media defendants. See *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493, 498 (Mo. App. 1980). The claims asserted by Imperial and the Rosengartens against the Sun-Times fall within the third of these categories. The claims against Cosmo's do not fall into any of them. As we have indicated, those claims involve an attempt by private parties to obtain redress against a private party based on statements involving a matter of private rather than public concern.

Whether the privilege afforded by the first amendment to statements that are not factual also extends to statements made by one private party about another on a matter of purely private concern is unsettled. Compare *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d at 499, and *Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325, 1334 (5th Cir. 1993), with Restatement (Second) of Torts §566, Comment *c* (1977). Among the more detailed discussions of this question was that made by the Supreme Court of Ohio in *Wampler v. Higgins*, 93 Ohio St. 3d 111, 752 N.E.2d 962 (2001), which involved a defamation action brought by a building owner against the author of an unflattering letter to the editor published in a local newspaper. The letter charged that the building owner had forced a grocer out of business by charging exorbitant rent and denounced him as a "ruthless speculator." In holding that the letter was not actionable as a matter of law, the court followed those decisions that have rejected the notion private individuals should be afforded less protection than media defendants with respect to the expression of opinions rather than facts. Although the court rested its decision on the state constitutional grounds, not the first amendment, the authorities it surveyed in reaching its conclusion did invoke federal

-14-

constitutional principles. *Wampler*, 93 Ohio St. 3d at 123-26, 752 N.E.2d at 974-76.

In the case before us, the judgments of the circuit and appellate courts were consistent with this line of cases. They assumed, without expressly deciding, that the constitutional privilege *does* extend to private/private statements. There are benefits to this approach. Where, as here, plaintiffs seek recovery from both private individuals and a media defendant based on the same communication, subjecting them to the same standards will insure a consistent outcome. The approach also recognizes that the inherent worth of speech in terms of its capacity for informing the public is not dependent on the status of the defendant who publishes it. See *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 55 L. Ed. 2d 707, 718, 98 S. Ct. 1407, 1416 (1978). In addition, the approach reduces ambiguity regarding whether a particular communication is actionable. This is an important value in first amendment jurisprudence, for ambiguity yields fear of liability and fosters self-censorship, the effects of which chill the free flow of protected expression. See *Hillsboro News Co. v. City of Tampa*, 451 F. Supp. 952, 954 (M.D. Fla. 1978).

Having said that, the question of whether the privilege afforded by the first amendment extends to private/private statements is a matter we need not resolve today. The lower courts' assumption that the privilege is applicable has not been challenged in this appeal. For the purposes of the present case, we shall therefore regard it as valid.

We turn then to the language of the ad itself to ascertain whether it can reasonably be interpreted as stating actual fact. Contrary to the appellate court, we believe that the answer to that question is no. The text is artless, ungrammatical, sophomoric and sometimes nonsensical. It is also a shameless appeal to ethnic prejudice, extolling, as it does, the supposed superiority of Italians over those of Jewish ancestry, at least "when it comes to fine clothing." We do not believe, however, that an ordinary reader would perceive it as making objectively verifiable assertions about plaintiffs' business.

The gist of the ad, taken as a whole, is simply this: plaintiffs copied Cosmo's "3 for 1" sale idea, plaintiffs were wrong to do so and should stop, and while most customers realize the difference between the companies offering the sales, those who might not should not be deceived–you get more for your money in Cosmo's 3 for 1 sale. To

be sure, the language Cosmo's used to convey these concepts was unflattering. The ad employed terms such as "rags," "flea market style warehouse," "dried cream cheese," "low rent," and "a hookers come on." It also likened plaintiffs to the Iraqi Information Minister and claimed they "inflate prices and compromise quality." In our view, however, these are merely subjective characterizations lacking precise and readily understood meaning. In the context of discount clothing sales, no reasonable person would regard them as anything other than colorful hyperbole aimed at capturing the reader's interest and attention.

The appellate court thought a reasonable reader might interpret the ad as stating actual facts about the plaintiffs themselves, but did not specify what those actual facts might be. The appellate court also believed that a reasonable reader might interpret the ad as stating actual facts about the originality of the goods Imperial sold. 367 Ill. App. 3d at 54. In reality, the ad says nothing whatever about the originality of the clothing Imperial sells. When the ad refers to imitators, imitations, plagiarism and "coveting your neighbor's concepts," it is talking about Imperial's appropriation of Cosmo's "3 for 1" sales concept. That Imperial got the idea for its "3 for 1" sale from Cosmo's *is* a verifiable fact. Because it is undisputably true, however, it cannot be the basis for a defamation claim. Consistent with the first amendment, a statement is not actionable unless it is factual and *false. Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d at 582.

In their brief, Imperial and the Rosengartens express profound resentment for what they perceive as the anti-Semitic tone of Cosmo's ad. While we fully appreciate why Imperial and the Rosegartens would find the language offensive, their arguments on this point do not affect our resolution of the appeal. No matter how distasteful they may be, epithets aimed at ethnic or religious groups fall within the protection of the first amendment. See *United States v. Eichman*, 496 U.S. 310, 318-19, 110 L. Ed. 2d 287, 296, 110 S. Ct. 2404, 2410 (1990). No circumstances are alleged in this case that would strip the language used in the ad here of that protection.

As we noted earlier in this opinion, a determination that language is not actionable under the first amendment not only is fatal to plaintiffs' defamation claims, it precludes them from obtaining

recovery under any of the other common law and statutory claims they asserted in their complaint. In light of this conclusion, we need not reach the remaining issues raised by the partes on this appeal. The circuit court acted correctly when it dismissed plaintiffs' complaint on the pleadings, with prejudice, pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)). Correspondingly, the appellate court should not have permitted any of the claims asserted in that complaint to proceed. To the extent that it did so, its judgment is reversed.

For the foregoing reasons the judgment of the appellate court is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*circuit court judgment affirmed.*

CHIEF JUSTICE THOMAS took no part in the consideration or decision of this case.