# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Peraica v. Riverside-Brookfield High School District No. 208**, 2013 IL App (1st) 122351

---

| | |
|---|---|
| Appellate Court Caption | ANTHONY PERAICA and TAXPAYERS UNITED OF AMERICA, Plaintiffs-Appellants and Cross-Appellees, v. RIVERSIDE-BROOKFIELD HIGH SCHOOL DISTRICT NO. 208, Defendant-Appellee and Cross-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-2351 |
| Filed | October 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's second amended complaint alleging that defendant school district violated the Property Tax Code, the Election Code and several provisions of the United States Constitution and the Illinois Constitution by using public funds in electioneering in favor of an affirmative vote on a referendum for a tax increase was properly dismissed on the ground that plaintiffs did not allege any recognizable violation of their constitutional rights; furthermore, the trial court did not abuse its discretion in denying the school district's request for attorney fees. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-15422; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Anthony J. Peraica, of Anthony J. Peraica & Associates, Ltd., of Chicago, appellant *pro se*.

J. Todd Faulkner, William R. Pokorny, and Scott R. Metcalf, all of Franczek Radelet P.C., of Chicago, for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiffs, Anthony Peraica and Taxpayers United of America, appeal the circuit court of Cook County's decision to dismiss, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), their second amended complaint against defendant Riverside-Brookfield High School District No. 208. Plaintiffs had alleged that defendant violated state laws, *i.e.*, section 18-115 of the Property Tax Code (35 ILCS 200/18-115 (West 2010)) and section 9-25.1 of the Election Code (10 ILCS 5/9-25.1 (West 2010)), as well as "the 1st, 9th and 14th Amendment rights of the plaintiffs as guaranteed under the United States Constitution and under the parallel provisions of the Illinois Constitution of 1970 (Article I, §§ 2, 4, 5 and 24)," article III, section 3, of the Illinois Constitution (Ill. Const. 1970, art. III, § 3), and the guarantees of the Civil Rights Act of 1871 (42 U.S.C. § 1983 (2000)). Defendant cross-appeals the circuit court's order denying its request for attorney fees pursuant to section 1988 of the Civil Rights Act (42 U.S.C. § 1988 (2000)). For the reasons that follow, we affirm.

¶ 2                                      BACKGROUND

¶ 3      For purposes of our review of the ruling on defendant's motion to dismiss, where the legal sufficiency of the complaint has been attacked, we accept as true the allegations in plaintiffs' second amended complaint. See *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 384 (2008); *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 293 (1998). The relevant facts, however, are not in dispute.

¶ 4      Defendant placed a referendum on the ballot for the April 5, 2011 consolidated general election, apparently seeking voter approval to increase defendant's property tax limiting rate. The referendum was defeated. However, on April 26, 2011, plaintiffs filed a three-count verified petition for expedited declaratory, injunctive, and other relief against defendant and its members. Plaintiffs alleged, among other things, that defendant and its members

proceeded with the referendum knowing that it was misleading and understated the amount of the property tax increase, and that they engaged in illegal electioneering to promote an affirmative vote on the referendum. After defendant and its members moved to dismiss plaintiffs' original complaint, plaintiffs voluntarily dismissed the named school board members. Plaintiffs subsequently filed a three-count first amended complaint against defendant on September 9, 2011, again seeking declaratory, injunctive, and other relief.

¶ 5 On October 19, 2011, defendant filed a motion to dismiss. On March 2, 2012, the trial court granted defendant's motion and dismissed counts I and II with prejudice. Count III, which alleged a violation of civil rights, was dismissed without prejudice.

¶ 6 On March 30, 2012, plaintiffs filed their second amended complaint, asserting a single claim seeking redress for violations of their constitutional rights. Among other things, plaintiffs alleged that defendant failed to "provide a fair and reasonable approximation of the property tax increase" in violation of the Property Tax Code. Plaintiffs also contended that defendant engaged in "election interference prohibited under the Election Code and in violation of the natural and civil rights of the plaintiffs by engaging in activities at public expense to promote an affirmative vote on the referendum." Plaintiffs alleged that these activities included, among other things, "producing and distributing leaflets in support of the referendum" and "electioneering activities calculated to discourage opposition to [the] referendum and to promote an affirmative vote thereon." In paragraph 12 of the second amended complaint, plaintiffs alleged that defendant violated section 9-25.1 of the Election Code (10 ILCS 5/9-25.1 (West 2010)) (entitled Election interference) by using public funds to support an affirmative vote on the referendum by:

"a. telling students to circulate 'volunteer' forms to other students during school hours, to sign-up students for pro-referendum literature blitzes and campaign activity;

b. allowing a pro-referendum group to use public resources such as tables, chairs, official publications and the like at school events on school grounds and inside the school building seeking support for the referendum from district residents;

c. hosting, on the school football field[,] a student gathering and rally in support of an affirmative vote on the referendum;

d. providing student photos, taken by the district photographer, to a pro-referendum group for its use in pro-referendum flyers and other campaign literature;

e. producing a pro-referendum television spot for the school's cable television station RBTV urging an affirmative vote on the referendum;

f. using the same television spot on RBTV.org the website for the television station;

g. producing a pro-referendum television program using two senior employees of the District;

h. mailing pro-referendum literature, produced at public expense, to 11,000 voters in District 208;

i. allowing an assistant principal to use school computers for maintaining pro-referendum campaign volunteer lists and other pro-referendum related information;

j. encouraging and allowing teachers to 'blog' on local websites in support of an

affirmative vote on the referendum;

      k. allowing and encouraging numerous telephone calls and emails by administrators and staff in support of an affirmative vote on the referendum; [and]

      l. directing senior personnel to speak to local groups urging them to cast an affirmative vote on the referendum."

¶ 7       Defendant again moved to dismiss the complaint pursuant to section 2-615. On July 17, 2012, the trial court granted defendant's motion to dismiss plaintiffs' second amended complaint and denied defendant's motion for attorney fees. On August 8, 2012, plaintiffs filed a notice of appeal. Defendant filed a cross-appeal.

¶ 8                         STANDARD OF REVIEW

¶ 9       A motion to dismiss for failure to state a cause of action pursuant to section 2-615 attacks "the legal sufficiency of a complaint based on defects apparent on its face." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). At this pleading stage, a plaintiff is not required to prove his case and need only allege sufficient facts to state all elements of the cause of action. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). When reviewing a section 2-615 motion, we accept as true "[a]ll well-pleaded facts and reasonable inferences that can be drawn from those facts." *Tuite v. Corbitt*, 224 Ill. 2d 490, 509 (2006). We also interpret the allegations in the complaint in the light most favorable to the plaintiff. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13; *Imperial Apparel, Ltd.*, 227 Ill. 2d at 384. "A circuit court should grant a section 2-615 motion to dismiss only if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." (Internal quotation marks omitted.) *Estate of Powell v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 15. " 'This broad statement, however, should not be interpreted as an adoption of notice pleading.' [Citation.]" *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶ 30. In opposing a motion for dismissal under section 2-615, "a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations." *Pooh-Bah Enterprises, Inc*, 232 Ill. 2d at 473; accord *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 52 (2001). "Illinois is a fact-pleading jurisdiction." *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003). "Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Our review of the circuit court's order granting the section 2-615 motion to dismiss is *de novo*. *Pooh-Bah Enterprises, Inc*, 232 Ill. 2d at 473.

¶ 10                             ANALYSIS

¶ 11       On appeal, as defendant notes, plaintiffs do not challenge the circuit court's dismissal of their claims that defendant violated the Election Code or Property Tax Code. Instead, plaintiffs argue only that they sufficiently alleged a cause of action against defendant based on its violation of the free speech clause of the first amendment to the United States Constitution entitling plaintiffs to damages under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2000)).

¶ 12                                Plaintiffs' Appeal

¶ 13    "Section 1983 establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' " *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 514 (1991) (quoting 42 U.S.C. § 1983 (1982)). "Two allegations must be made to state a claim under that provision." *Id.* " 'First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.' " *Id.* (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The purpose of section 1983 is "to 'deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.' " *Estate of Strocchia v. City of Chicago*, 284 Ill. App. 3d 891, 902 (1996) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).

¶ 14    Municipalities and other local government units can be sued under section 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). As the *Monell* Court explained: "[A]lthough the touchstone of the [section] 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. "While the question of what actions constitute a 'policy or custom' is not fully resolved by the courts [citation], it is clear that a well-settled municipal practice can establish a 'custom or usage' with the force of law. [Citation.]" *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983).

¶ 15    In *McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000), the court explained that, in order to sufficiently allege a section 1983 claim against a municipality, a plaintiff must allege that "(1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick*, 230 F.3d at 324; accord *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 364 (2010) ("To establish municipal liability under section 1983 *** a plaintiff must allege that he has been deprived of a constitutionally protected right and that deprivation was caused by a municipal policy, custom or practice."); see also *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) ("a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights").

¶ 16    On appeal, defendant does not dispute that a school district is a government body that *can* be subject to section 1983 liability. However, defendant argues that nowhere in their second amended complaint do plaintiffs allege sufficient facts to maintain a claim against defendant.

Specifically, defendant argues that plaintiffs have failed to allege facts sufficient to support a section 1983 claim under the standard set forth in *McCormick*.

¶ 17    Plaintiffs note that "there is a relative dearth of cases directly on point." Nevertheless, plaintiffs offer no reasoned argument, nor do they even address, whether or how they have met the *McCormick* standard for sufficiently alleging a section 1983 claim against a municipality. In their opening brief, plaintiffs acknowledge that the issue in *McCormick* was whether the plaintiff's rights had been violated by a "municipal policy" and plaintiffs concede that they have not alleged that any municipal policy of defendant is at issue. However, in the absence of an actual municipal policy, *McCormick* necessitates that plaintiffs assert or show that defendant "had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law" or that their alleged constitutional injury "was caused by a person with final policymaking authority." *McCormick*, 230 F.3d at 324. Plaintiffs make no attempt to meet this standard. They instead contend that *McCormick* is inapposite because "the precise legal principle at issue" here is defendant's "electioneering" at public expense.

¶ 18    Noting that the legal standard in *McCormick* is derived from *Monell v. Department of Social Services*, 436 U.S. 658 (1978), plaintiffs focus on the language from *Monell.* As noted earlier, the *Monell* Court stated that a section 1983 action may be brought against a government body for an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, *or decision* officially adopted and promulgated by that body's officers." (Emphasis added.) *Id.* at 690. Plaintiffs argue that defendant's action of placing the referendum on the ballot was a *decision* that was "officially promulgated" by defendant. Plaintiffs also argue that the position was "officially adopted."[1] However, plaintiffs never alleged that placing the referendum on the ballot was an unconstitutional action. Instead, it was the alleged "illegal electioneering" and "election interference" to promote an affirmative vote on the referendum that plaintiffs complained of. Plaintiffs also argue in their reply brief that defendant "made a conscious, well-coordinated *decision* to use all of its resources and clout to promulgate its support for [its position that voters should approve the tax rate increase to fund its operating expenses]." (Emphasis added.) So, it is unclear what "decision" plaintiffs assert as the unconstitutional action entitling them to bring suit under section 1983. Also, plaintiffs have failed to cite to any apposite case regarding the application of section 1983 liability, pursuant to the standards articulated in *Monell* and *McCormick*. However, assuming, *arguendo*, that defendant's activities had constituted "a municipal policy, custom or practice," or a "decision officially adopted and promulgated" by its officers, we agree with defendant that plaintiffs' second amended complaint fails to allege any recognizable violation of their constitutional rights.

_____

[1]Plaintiffs also assert that "a compelling argument can also be made that such actions by [defendant] have become customary." Nonetheless, plaintiffs fail to make that argument. They merely state in support of the argument that "this was not the first referendum [defendant] initiated and campaigned on behalf of." Plaintiffs provide no citation to the record for this assertion.

¶ 19    In order to state a cause of action under section 1983, plaintiffs must allege, with specificity, a violation of their rights under federal law. See *Myre v. Board of Education of Seneca Township High School District No. 160*, 108 Ill. App. 3d 440, 445-46 (1982). Although plaintiffs contend that defendant violated section 9-25.1(c) of the Election Code, it is the Board of Elections that is empowered to adjudicate such complaints. See 10 ILCS 5/9-20 (West 2010) ("[a]ny person who believes that a violation of this Article has occurred may file a verified complaint with the [State] Board [of Elections]"). "Mere allegations of a state law infraction do not necessarily support a constitutional claim brought pursuant to Section 1983." *Roger C. ex rel. Gilbert v. Valley View Public School District No. 365-U*, No. 08-C-1254, 2008 WL 4866353, at *8 (N.D. Ill. June 23, 2008).

¶ 20    As defendant notes, "the crux of Plaintiffs' constitutional claim appears to be that they 'were forced to struggle against the public funds' that defendant supposedly spent in support of the referendum." Plaintiffs do not allege that defendant prevented them from expressing their views.

¶ 21    "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). Plaintiffs argue that "there was no viewpoint neutrality underlying" defendant's actions. However, a government entity "is entitled to say what it wishes [citation] and to select the views that it wants to express." (Internal quotation marks omitted.) *Id.* at 467-68; see also *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 833 (1995) ("when the State is the speaker, it may make content-based choices"). The United States Supreme Court has acknowledged the latitude that exists with respect to restrictions for government speech, *i.e.* "where the government's own message is being delivered." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 541 (2001). The *Legal Services* Court explained the rationale for that latitude:

> "[w]hen the government speaks, for instance to promote its own policies or to advance a particular idea, it is, in the end, accountable to the electorate and the political process for its advocacy. If the citizenry objects, newly elected officials later could espouse some different or contrary position." (Internal quotation marks omitted.) *Id*. at 541-52 (quoting *Board of Regents of the University of Wisconsin System v. Southworth*, 529 U.S. 217, 235 (2000)).

¶ 22    There is no constitutional prohibition against the government's use of funds to support a particular cause, even if certain segments of the population may not agree with the government's position. As the United States Supreme Court has explained:

> "The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other. *** There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy. [Citation.]" (Internal quotation marks omitted.) *Rust v. Sullivan*, 500 U.S. 173, 193 (1991).

*Cf. Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 544-48 (1983) (holding that statute that conditioned a government benefit, *i.e.*, a tax exemption, on the recipient giving up its right to engage in political speech did not violate the constitutional conditions because the statute was not intended to suppress any ideas and the plaintiff remained free to exercise its speech rights outside of the government tax exemption program). We note that *Rust* and *Regan* were discussed by the Illinois Supreme Court in *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 480 (2009), where the court upheld the circuit court's dismissal of the plaintiff's first amendment and free speech clause claims pursuant to section 2-615.

¶ 23    No Illinois case is on point with the instant case. Although both parties cite *Board of Regents of the University of Wisconsin System v. Southworth*, 529 U.S. 217, 229 (2000), in support of their divergent positions, we believe the case is inapposite because it did not involve "government speech." As the *Southworth* court explained:

"The University having disclaimed that the speech is its own, we do not reach the question whether traditional political controls to ensure responsible government action would be sufficient to overcome First Amendment objections and to allow the challenged program under the principle that the government can speak for itself. If the challenged speech here were financed by tuition dollars and the University and its officials were responsible for its content, the case might be evaluated on the premise that the government itself is the speaker. That is not the case before us." *Id.*

Here, however, the government itself is the speaker.

¶ 24    We find persuasive the reasoning of the court in *Kidwell v. City of Union*, 462 F.3d 620 (6th Cir. 2006). The *Kidwell* case, similar to the instant case, involved "the rare instance when public citizens seek to limit the speech of a governmental entity rather than the reverse." *Id.* at 623. Specifically, in *Kidwell*, the plaintiffs challenged the expenditure of city funds, claiming that the defendants violated the first and fourteenth amendments by, among other things, advocating in favor of proposed tax levies. *Id.* at 621. The *Kidwell* plaintiffs contended that the defendants' actions had compelled them to support causes to which they were adverse. *Id.* at 623. The court held that the city did not improperly compel taxpayers to support its positions by expending public funds to advocate for them.

¶ 25    As the *Kidwell* court noted: "The natural outcome of government speech is that some constituents will be displeased by the stance their government has taken. Displeasure does not necessarily equal unconstitutional compulsion, however, and in most cases the electoral process–not First Amendment litigation–is the appropriate recourse for such displeasure." *Id.* at 626; see also *Lash v. City of Union*, 104 F. Supp. 2d 866 (S.D. Ohio 1999) (city's use of funds to promote tax levy did not violate taxpayers' free speech rights); *Alabama Libertarian Party v. City of Birmingham*, 694 F. Supp. 814 (N.D. Ala. 1988) (city's use of tax revenues to promote passage of measures to enhance city services did not violate first amendment right of association).

¶ 26    Here, plaintiffs' second amended complaint fails to allege facts sufficient to establish liability under section 1983 because it fails to allege any recognizable violation of plaintiffs' constitutional rights. We hold that plaintiffs have failed to state a cause of action under

section 1983 and the trial court correctly dismissed their complaint. We therefore need not address defendant's argument that plaintiff Taxpayers United Of America lacked standing.

¶ 27                                    Defendant's Cross-Appeal

¶ 28        In its cross-appeal, defendant argues that it should be awarded its attorney fees pursuant to section 1988. Section 1988 of the Civil Rights Act allows a court to award attorney fees to the prevailing party in civil rights litigation, such as a section 1983 action. *Yang v. City of Chicago*, 195 Ill. 2d 96, 102 (2001); *Shepard v. Hanley*, 274 Ill. App. 3d 442, 444 (1995). "Specifically, section 1988 provides that 'the court, in its discretion, may allow the prevailing party *** a reasonable attorney's fee as part of the costs.' " *Yang*, 195 Ill. 2d at 102 (quoting 42 U.S.C. § 1988(b) (1994)). Section 1988 authorizes a fee award to a prevailing defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation. *Fox v. Vice*, 563 U.S.\_\_\_, \_\_\_, 131 S. Ct. 2205, 2213 (2011); see also *Stahelin v. Forest Preserve District*, 401 Ill. App. 3d 1030, 1033 (2010) ("Section 1988 provides a court discretion to award a prevailing defendant in a section 1983 action its reasonable attorney fees upon a 'finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' " (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980))); *Munson v. Friske*, 754 F.2d 683, 697 (7th Cir. 1985) (Attorney fee award is appropriate where a plaintiff's claims are "without merit and simply preposterous."). As this court has stated, a " 'plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that *the plaintiff continued to litigate after it clearly became so*.' " (Emphasis added.) *Stahelin*, 401 Ill. App. 3d at 1035 (quoting *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). "The purpose of allowing attorney fees to defendants in all of these contexts is to protect defendants from burdensome litigation having no legal or factual basis." *Id.*; accord *Fox v. Vice*, 563 U.S. at \_\_\_, 131 S. Ct. at 2213. "[W]hen a civil rights suit is lacking in any legal or factual basis ..., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." (Internal quotation marks omitted.) *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (quoting *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987)).

¶ 29        Defendant claims that the circuit court should have awarded attorney fees because the issues in this case were not ones of first impression requiring judicial resolution, there was no real threat of injury to plaintiffs as the referendum had already been defeated, and the second amended complaint was frivolous.

¶ 30        As we have explained:

        "A suit is frivolous when it has no reasonable basis, whether in fact or law. [Citation.] Whether a plaintiff ultimately loses his case is not in itself a sufficient justification for the assessment of fees. [Citation.] Whether a plaintiff's claim is frivolous, unreasonable, or groundless must be judged by an objective standard, although if the court finds that a plaintiff has brought or continued a claim in bad faith, a stronger

-9-

basis exists for charging the plaintiff with the attorney fees incurred by the defendant. [Citations.] In this circumstance, the court should focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful. [Citation.]" (Internal quotation marks omitted.) *Stahelin*, 401 Ill. App. 3d at 1035-36.

¶ 31 According to the record, the trial court dismissed plaintiffs' *first* amended complaint because it found that it did not state a viable claim for damages on any of the theories plaintiffs had advanced under state law, section 1983, or the first amendment. When the trial court granted plaintiffs leave to file a second amended complaint, it informed plaintiffs they would have to significantly amend their complaint in order to state a viable claim that could withstand a motion to dismiss. During the subsequent hearing to dismiss plaintiffs' *second* amended complaint at law, defendant argued that plaintiffs had failed to heed the trial court's warning and that count III of the complaint, the sole remaining claim, was "substantively identical" to the one that had been previously dismissed. Defendant argued, among other things, that plaintiffs had "failed to identify any substantive violations of their rights under federal law or [the] Federal Constitution that would support a Section 1983 claim." Defendants argued that the only federal right plaintiffs advanced was the free speech clause of the first amendment, and a "passing reference" to the ninth and fourteenth amendments.[2]

¶ 32 In response, plaintiffs argued that the second amended complaint was "actually completely different" than the first amended complaint. Although plaintiffs noted that, in their response, they had discussed the "specific paragraphs that [were] different," the record contains no copy of any response. However, plaintiffs "elaborated" on the response during the hearing: "The sole issue with regard to that referendum is whether the First Amendment and Ninth Amendment and Fourteenth Amendment rights of the Plaintiffs were violated by Defendant's violation of the Election Code by using public funds to support and finance their campaign urging an affirmative vote in support of the tax increase." Plaintiffs also referred to paragraph 6 of the second amended complaint, which referenced the "First, Ninth, and Fourteenth Amendments" and which we note was identical to paragraph 6 of the first amended complaint. Plaintiffs conceded that they "reallege[d] the allegations of paragraph

_____

[2]Despite plaintiffs' "passing reference" to the fourteenth amendment, and their claim that defendant engaged in "illegal electioneering," plaintiffs have made no allegations regarding the integrity of the election process that would warrant relief under section 1983. Courts have noted that "[t]he Due Process Clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair." *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (and cases cited therein). "There is a distinction between 'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote." *Graham v. Reid*, 334 Ill. App. 3d 1017, 1024 (2002). "Because the Constitution largely contemplates state regulation of state elections, we have long recognized that not every state election dispute implicates federal constitutional rights." *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992) " 'Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation.' " *Id.* (quoting *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986)). "In most cases, irregularities in state elections are properly addressed at the state level, whether through state courts or review by state election officials." *Id.*

42 of Count 3" of the first amended complaint, in paragraph 12 of the second amended complaint (which allegations we have already outlined). Plaintiffs contended, however, that the new paragraph had "vital and crucial additions." We first note that *both* versions alleged that defendant's actions were done "under color of state law." The new version, however, added one sentence: "The cost of these activities to the public cannot be determined at this time, but on information and belief, was in excess of Fifty Thousand [Dollars] ($50,000) especially when the salary of the employee hired by the District to coordinate its pro-referendum activities is factored into the calculation."

¶ 33 In addressing defendant's request for attorney fees, the court stated: "And I'll just say that I'm not inclined to grant attorneys' fees in this matter." The court then granted defendant's motion to dismiss with prejudice. The court stated:

"I indicated in the first motion to the Plaintiff that I believe[d] that the complaint needed to be changed materially. *There has been some change, but the change primarily has been to eliminate some of the old counts that were here and just to pare this thing down as it were.* But *** I just don't think that the complaint passes muster, and I just don't believe that there's a cognizable claim that the Plaintiffs are able to bring to this particular set of circumstances we have before us." (Emphasis added.)

¶ 34 The trial court did not explain its reason for denying defendant's attorney fee request. "[W]e review the determination [to award attorney fees pursuant to section 1988] under the highly deferential 'abuse of discretion' standard." *Shepard*, 274 Ill. App. 3d at 444. An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court. *Leffler v. Meer*, 60 F.3d 369, 372 (7th Cir. 1995). "This deferential standard of review is necessary to protect the district court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' " *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "An attorneys' fees award pursuant to § 1988 rests within the sound discretion of the district court because that court is particularly well-qualified to make the partially subjective findings necessary for an award of fees and to perform the balancing of equities that is an integral part of the proceeding for an award of fees." *Libby v. Illinois High School Ass'n*, 921 F.2d 96, 98 (7th Cir. 1990). We cannot say that the trial court abused its discretion in defendant's request for attorney fees. "If reasonable persons could differ, then the appellate court will not be able to find an abuse of discretion." *Id.* We conclude the trial court did not abuse its discretion in denying defendant's request for attorney fees.

¶ 35                                                    CONCLUSION

¶ 36 In view of the foregoing, we affirm the judgment of the circuit court of Cook County dismissing with prejudice plaintiffs' second amended complaint at law pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)). We also affirm the trial court's denial of defendant's request for attorney fees pursuant to section 1988 of the Civil Rights Act. 42 U.S.C. § 1988 (2000).

¶ 37 Affirmed.